UNIVERSITY CHRISTIAN
CHURCH, Appellant,

v.

CITY OF AUSTIN, et al., Appellees.

No. 14637.

Court of Appeals of Texas,
Austin.

Dec. 10, 1986.

Rehearing Denied Feb. 25, 1987.

Elizabeth G. Bloch, Hilgers & Watkins, Austin, for appellant.

Honorable Ken Oden, Co. Atty., Kathy D. Boutchee, Asst. Co. Atty., Austin, for appellees.

Before POWERS, BRADY and CARROLL, JJ.

BRADY, Justice.

The University Christian Church appeals from a judgment for ad valorem taxes imposed by appellees, the City of Austin, Austin Independent School District, and Travis County. The taxes were imposed on two church parking lots leased to a commercial parking lot company under an arrangement reserving certain parking rights for the church. The church asserts the lots are exempt from taxation under Tex.Tax Code Ann. § 11.20(a)(1) (1982) as property used for the purpose of religious worship. After a jury trial, judgment was entered in favor of the taxing authorities. We will reverse the judgment.

The exemption from taxation claimed by the church is authorized by Art. VIII, § 2 of the Texas Constitution which provides "... the legislature, may by general law, exempt from taxation actual places of religious worship...." Pursuant to this provision, the Legislature enacted § 11.-20(a)(1). This provision reads as follows:

(a) An organization that qualifies as a religious organization as provided by subsection (c) of this section is entitled to an exemption from taxation of:

(1) the real property that is owned by the religious organization, is used primarily as a place of regular religious worship and is reasonably necessary for engaging in religious worship;

Thus, to qualify for the exemption two requirements must be satisfied: first, the property must be used for the primary purpose of religious worship; secondly, the property must be reasonably necessary for that worship.

The parking lots in controversy are owned by the church and are located across the street from the church building. In October of 1977, the church leased these lots to Allright Parking. Under the terms of the lease, the church retained exclusive use of the lots on Sundays and daily use of several spaces. The lease also provided the lots could be reserved for a total of eighteen mornings, afternoons, or evenings per year, and at any other time for any reason upon twenty-four hours notice. As remuneration, the church received a monthly rental fee and a percentage of the gross receipts.

The case was submitted to the jury on two special issues. The first issue inquired "Do you find from a preponderance of the evidence that the real property owned by University Christian Church, including the sanctuary and parking lots, is used primarily as a place of religious worship?" The jury replied, "We do not." In response to the second special issue, the jury found the parking lots were "reasonably necessary for engaging in religious worship." Appellant asserts that the jury's answer to special issue number one was against the great weight and preponderance of the evidence. Appellant also contends that the trial court erred by not directing a verdict granting the church an exemption based on the evidence presented. We sustain both points of error.

A trial court may not direct a verdict unless upon viewing all evidence presented in a light most favorable to the opposing party, the evidence does not raise a material question of fact and the moving party is entitled to judgment as a matter of law. *Sharpe v. Safway Scaffolds Co.*, 687 S.W.2d 386, 393 (Tex.App.1985, no writ); *M.S. Foundation v. Permacrete Building Systems, Inc.*, 666 S.W.2d 568, 570 (Tex. App.1984, writ ref'd); *Dryden v. City National Bank*, 666 S.W.2d 213, 215 (Tex. App.1984, writ ref'd n.r.e.). A review of the record below reveals a complete absence of evidence to support any finding that the primary use of the sanctuary was not religious worship. In contrast, numerous witnesses testified that a comprehensive array of worship activities took place on the premises, including weekly church services, choir practice and bible studies. It is clear the primary use of the church property as a whole is religious worship.

While appellee asserts the determinative issue in this case was the primary use of the parking lots themselves, this Court notes that the traditional construction of "primary use" requires an examination of the property as a whole rather than a piecemeal approach. The courts which have addressed this issue have not required religious worship to occur on every square foot of the church property but merely on such portions of the whole that the primary purpose of the entirety remains religious worship. *See e.g. Davis v. Congregation Agudas Achim*, 456 S.W.2d 459, 461 (Tex. Civ.App.1970, no writ) (occasional renting for secular purposes proper if primary purpose of the entirety remains religious worship); *City of Houston v. Cohen*, 204 S.W.2d 671, 673 (Tex.Civ.App.1947, no writ) (exemption encompasses grounds necessary for access, light, and decorative enhancement); *Trinity Methodist Episcopal v. City of San Antonio*, 201 S.W. 669, 670 (Tex.Civ.App.1918, writ ref'd) (includes land necessary for ingress and egress).

■ Appellees assert that an examination of the use of the parking lot alone is the proper mode of analysis citing the case of *Davies v. Meyer*, 541 S.W.2d 827 (Tex. 1976) which denied the exemption to part of a church-owned camp. In *Davies*, the exemption was denied to all but two acres of

the camp because the church failed to demonstrate that "actual religious worship" occurred on the remaining 153 acres. *Id.* at 829. The appellees' reliance on *Davies* is, however, misplaced because in that case religious worship only occurred on a minuscule percentage of the property, therefore, the "primary use" of the *whole* was clearly not religious worship but rather recreation and education. Here, the parking facilities in question are essential for access to the sanctuary, thus should be exempt as property necessary for ingress and egress under *Trinity Methodist Episcopal v. City of San Antonio, supra,* at 670. Furthermore, unlike the disproportionate use considered in *Davies* (153 acres with only 2 used for worship), the lots in this case are comparable in size to the needs of the membership (50 spaces for 300 members), thus, within that allowed under the reasonably necessary requirements of *City of Houston v. Cohen, supra* at 673, and the language of § 11.20(a)(1).

 It is also asserted that the status of these parking lots was altered by the execution of a commercial lease, but it has been held that renting of church property for secular use will not deprive it of the exemption so long as the primary purpose remains religious worship. *Davis v. Congregation Agudas Achim, supra.* In *Davis,* periodic rental of synagogue facilities to civic organizations was held to not destroy the exemption because the primary use of the building remained unchanged and the income was merely used to defray costs of maintenance. *Id.* at 461. Likewise, in this case, the evidence showed all income from the lots merely was devoted to maintenance of church property.

The *Davis* court also noted that there is no requirement under Tex. Const.Ann. art. VIII, § 2 that the exempt property not produce income. *Id.* at 461. Nor is there such a requirement under § 11.20, moreover, that statute specifically authorizes such use by providing:

> Use of property that qualifies for the exemption ... for occasional secular purposes other than religious worship does not result in loss of the exemption if the

primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship. *Id.*, subsection (d). While the evidence here indicated that the income from the lots exceeded the cost of maintaining the lots themselves, it is undisputed that the proceeds were insufficient to cover the costs attributable to the church property as a whole and that these funds were so used.

As noted above, for property to qualify for the exemption under § 11.20(a)(1), it must not only be used for the primary purpose of religious worship, but also must be reasonably necessary for that worship. The record before this Court shows that numerous witnesses testified to the need for parking facilities and that no evidence to the contrary was presented. Indeed, it is an undeniable reality that in our automobile oriented society, urban located institutions require parking facilities of some kind to ensure their existence.

There was also copious evidence that the commercial lease arrangement was reasonably necessary to preserve the church's ability to utilize the lots. Testimony established that because the church is located next to a university, there is tremendous competition for any available parking spaces. Furthermore, several witnesses testified that the university students' ravenous appetite for parking necessitated stringent security measures in order to preserve spaces for church use. One witness testified that a previous attempt by the church to police the lots itself was so cumbersome and expensive that it was abandoned after only a short time. It was also repeatedly asserted that leasing of the lots provides the church an effective mechanism to assure spaces were always available for church use as the commercial operator systematically patrols the lots and even supplies markers and attendants to ensure ample parking for funerals and other special activities.

As noted above, to qualify for the exemption under § 11.20(a)(1), the property must be used primarily for regular religious wor-

ship and be reasonably necessary for that worship. All evidence in the record before us indicates the primary use of the church property as a whole, including both the lots and sanctuary, was regular religious worship. Although no actual worship occurred on the lots, the primary purpose for which they were acquired and retained by the church was to provide access to the church for the members. There was also evidence clearly establishing that these lots were reasonably necessary for engaging in religious worship. Because the overwhelming weight of the evidence demonstrates the appellant's right to the exemption under § 11.20, we hold the trial court should have directed a verdict granting them the exemption.

Because we find the trial court should have directed a verdict for appellant, we need only address in an ancillary manner appellant's point of error challenging the jury's finding on the primary use of the parking lots. A holding that a verdict should be directed is implicitly a finding that there was no evidence to support a contrary verdict. *See* Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 369 (1960). Since we find there is no evidence to support a verdict other than one qualifying appellant for the exemption, we also find the jury's finding to the contrary was against the great weight and preponderance of the evidence.

Because of the foregoing, we reverse the trial court's judgment and render for the appellant.