**CITY OF AUSTIN et al., Petitioners,**

v.

**UNIVERSITY CHRISTIAN CHURCH, Respondent.**

No. C–6294.

Supreme Court of Texas.

Nov. 23, 1988.

Rehearing Denied Jan. 18, 1989.

Ken Oden and Kathy D. Boutchee, Travis County Attorney's Office, Austin, for petitioner.

Thomas H. Uatkins and Elizabeth Bloch, Hilgers & Watkins, Austin, for respondent.

RAY, Justice.

The City of Austin, Austin Independent School District and Travis County sued University Christian Church to collect delinquent ad valorem taxes levied on two church parking lots which had been leased to a commercial parking lot company. The church claimed that the property was exempt. *See* Tex.Tax Code Ann. § 11.20(a)(1) (Vernon 1982). Based on jury findings, the trial court rendered judgment in favor of the taxing authorities. The court of appeals reversed the trial court's judgment

and rendered judgment in favor of the church. 724 S.W.2d 94. We reverse the judgment of the court of appeals and remand the cause to that court for further consideration.

University Christian Church owns two parking lots across the street from the church sanctuary and adjacent to The University of Texas campus. In October 1977, the church leased the lots to Allright Parking. Under the terms of the lease, the church retained use of the lots on Sundays and on certain other occasions. The church received a monthly fee and a percentage of Allright's gross receipts as rent for the use of its property.

Section 11.20 of the Texas Tax Code controls the determination of whether a religious organization's property is exempt from ad valorem taxation. Subsection (a)(1) provides that a religious organization is entitled to an exemption from taxation if "the real property that is owned by the religious organization, is used primarily as a place of regular religious worship, and is reasonably necessary for engaging in religious worship." Tex.Tax Code Ann. § 11.20(a)(1) (Vernon 1982). The church had the burden of proving that its property met the criteria for tax-exempt status. *Davies v. Meyer*, 541 S.W.2d 827 (Tex. 1976).

It was stipulated that the church owned the property so only two issues were submitted to the jury: (1) whether the property was "used primarily as a place of regular religious worship," and (2) whether the property was "reasonably necessary for engaging in religious worship." *See* Tex.Tax Code Ann. § 11.20(a)(1) (Vernon 1982). The jury found that the property was "reasonably necessary" for religious worship, but failed to find that the property was "primarily used" for religious worship. Because the church failed to prove one of the essential elements for the exemption, the trial court rendered judgment for the taxing authorities. The court of appeals, however, reversed the judgment of the trial court and rendered judgment for the church, holding that the evidence conclu-sively established the property was used primarily for religious purposes.

In reaching its decision, the court of appeals approved the submission of the first issue which inquired:

Do you find from a preponderance of the evidence that the real property owned by University Christian Church, including the sanctuary and parking lots, is used primarily as a place of religious worship?

The taxing authorities objected to this issue because only the tax-exempt status of the parking lots was at issue. The taxing authorities did not dispute the tax-exempt status for the sanctuary. Despite the erroneous submission of this issue, the jury found in favor of the taxing authorities. The trial court limited its judgment in favor of the taxing authorities to the parking lots at issue.

The jury's answer to this issue should have rendered the error harmless, but it does not because the court of appeals focused on the sanctuary to support its "no evidence" holding. The court of appeals wrote:

A review of the record below reveals a complete absence of evidence to support any finding that the primary use of the sanctuary was not religious worship.

724 S.W.2d at 95. Of course no evidence was found. There was no dispute regarding the sanctuary. This is precisely why the taxing authorities objected to the issue in the first place.

The taxing authorities, however, take their argument too far when they suggest that by definition a parking lot cannot be a place of religious worship because no actual acts of worship occur on the parking lot. For purposes of the tax exemption, a place of religious worship includes not only the sanctuary, but also those grounds and structures surrounding the sanctuary which are necessary for the use and enjoyment of the church. *See City of Houston v. Cohen*, 204 S.W.2d 671, 673 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.); *Trinity Methodist Episcopal Church v. City of San Antonio*, 201 S.W. 669, 670 (Tex.Civ.App.—San Antonio 1918, writ ref'd). Under this definition a parking

lot may qualify as a place of religious worship. Whether a parking lot used in connection with regular religious worship is tax exempt, however, depends on (1) whether the religious organization owns the property, (2) whether the property's use is primarily religious, and (3) whether the property's use is reasonably necessary to the religious worship.

There was no dispute at trial regarding the element of ownership. Regarding the third element the jury found that the parking lots were "reasonably necessary" for religious worship. The taxing authorities do not contest this finding so it is no longer a matter in dispute. The only issue remaining is whether the use of the parking lot was primarily religious or secular. Pertinent to this issue is § 11.20(d) of the Tax Code which explains that occasional, secular use of church property does not disqualify the property from tax-exempt status if "the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship." Tex.Tax Code Ann. § 11.20(d) (Vernon 1982).

The taxing authorities argue that § 11.20(d) requires a determination that the property is not tax-exempt because "all income" from the secular use is not "devoted exclusively to the maintenance and development of the property as a place of religious worship." This argument is premised on the fact that Allright makes a profit from its commercial use of the church's parking lots. Because Allright has income from its secular use of the property, the taxing authorities conclude that the church cannot claim that the property's primary use is religious. We disagree.

■ This construction of the statute virtually eliminates any secular use of the church's property without regard to the property's primary use. Such a construction shifts the inquiry from how the property is primarily used to whether the church controls the secular use. This is contrary to the intent of the legislature, which clearly expressed in the statute that the inquiry be as to the property's primary use. The "all income" test of § 11.20(d) refers only to the secular use to which the church puts its property and not to the resulting use or profit made on the property by any other entity. The church's secular use in our present case is its lease with Allright Parking. It is undisputed that all rent payments under this lease go to the church and are used appropriately by the church.

We do not say that the church's lease arrangement with Allright and Allright's profit from the church property is irrelevant. Any commercial advantage gained by the secular use of a church's property is highly relevant to the "primary use" issue. We say only that a church is not foreclosed from attempting to establish that its property's use is primarily religious, when some other secular use of the property produces income for some entity other than the church.

■ We hold that the court of appeals erred in concluding, as a matter of law, that the church's parking lots were primarily used for religious worship. The nature and extent of the commercial enterprise operating on the church's property is some evidence to support the jury's failure to find for the church on Issue 1, the "primary use" issue. Despite the efforts of the taxing authorities and the church to resolve this issue as a matter of law, the property's primary use is, and remains, an issue of fact for the jury.

Whether the jury's failure to find that the parking lot was used primarily for religious purposes is against the great weight and preponderance of the evidence we cannot say, because our jurisdiction extends only to questions of law. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex. 1988). We also cannot say whether the court of appeals has made a ruling on the church's complaint that the jury's response to this issue was against the great weight and preponderance of the evidence. The court's ruling is unclear because it mixes traditional concepts of legal and factual insufficiency. The court of appeals writes:

Because the overwhelming weight of the evidence demonstrates the appellant's

right to the exemption under § 11.20, we hold the trial court should have directed a verdict granting them the exemption. 724 S.W.2d at 97. Even if this is construed to be a ruling that the evidence is factually insufficient, we must remand to the court of appeals because it has failed to comply with the guidelines for reviewing such questions of fact. Our most recent explanation of those guidelines is found in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986).

The judgment of the court of appeals is reversed and the cause is remanded to that court for it to consider whether the jury's failure to find that the parking lot was used primarily for religious purposes was against the great weight and preponderance of the evidence.

MAUZY, J., dissents, joined by SPEARS, ROBERTSON and KILGARLIN, JJ.

MAUZY, Justice, dissenting.

Section 11.20(d) of the Texas Tax Code provides the statutory guidelines for deciding whether property is used primarily for religious worship. It states:

Use of property that qualifies for the exemption prescribed [under Section 11.-20(a)(1)] for occasional secular purposes other than religious worship does not result in loss of the exemption if the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship.

Under this provision, property used for occasional secular purposes may still be exempt from taxation so long as "all income" from the secular use is devoted exclusively to the maintenance and development of the property as a place of religious worship.

The court today tries to hedge on these clear statutory guidelines by stating that the "all income" test refers only to the church's income and not to any income which some other entity may derive from the property. However, what the statute says is "*all* income."

It is undisputed in this case that all income from the property's use as a commercial parking lot does not go into the church's coffers. Allright Parking, a private for-profit corporation, receives over half the total income from the parking lot and the income it receives certainly does not go toward developing the property as a place of religious worship. Therefore, as a matter of law, this property is not being used primarily as a place of religious worship, and the taxing authorities are entitled to collect the taxes due.

I do not read any ambiguity in the "all income" language of section 11.20(d). However, assuming some ambiguity exists, we have long held that any statutory exemption from taxation must be strictly construed. *Hilltop Village, Inc. v. Kerrville Independent School District*, 426 S.W.2d 943 (Tex.1968); *see also Trinity Methodist Episcopal Church v. City of San Antonio*, 201 S.W. 669 (Tex.Civ.App.—San Antonio 1918, writ ref'd). The court today refuses to abide by this rule of strict construction and instead construes the statute so as to favor exemption from taxation.

This is wrong, and it is not only wrong as a matter of statutory construction; it is wrong under the Texas Constitution. Under article VIII, section 2 of the Texas Constitution, only actual places of religious worship may be exempted from taxation. The court has construed section 11.20(d) so as to allow for the possibility that land used for a commercial enterprise may be exempt from taxation. In doing so, it effectively renders the statute unconstitutional and permits a state-subsidized competitive advantage to be given the commercial enterprise.

Providing for equal and uniform taxation was a major focus of the 1875 Constitutional Convention in Texas. *See* 1 *The Constitution of the State of Texas: An Annotated and Comparative Analysis*, 565 (G.Braden ed.). The legislature had previously granted unpopular exemptions from taxation and, by 1875, there was a strong feeling against such exemptions. *See id.* at 565, 595. Therefore, the delegates wrote into the Constitution of 1876 that taxation

must be "equal and uniform" and that any laws exempting property other than that constitutionally authorized would be void. Tex. Const. art. VIII, §§ 1, 2. This constitutional prohibition is the reason behind the rule of strict construction applicable to tax exemptions; the rule is premised on the recognition that tax exemptions are "the antithesis of equality and uniformity." *Hilltop Village, Inc.*, 426 S.W.2d at 948.

The strong sentiment against exemptions apparently continued because, in adopting the 1906 amendment to article VIII, section 2, the people of Texas drove an extra nail[1] into the exemption coffin. The amendment provided that all exemptions, other than those authorized by the constitution, would be not just void, but "null and void." *Id.* at 596. In 1928, this constitutional provision was again amended so as to allow church parsonages to be exempt from taxation. *Id.* This amendment was adopted in response to the court's decision in the *Trinity Methodist Episcopal Church* case that, regardless of what the statute might say, a minister's residence was not an "actual place of religious worship" under the constitution and therefore could not be exempt from taxation. 201 S.W. at 670.

Given that a minister's residence is not an actual place of religious worship, I am hard-pressed to see how a commercial parking lot is. If the people of this state want to exempt church-owned commercial parking lots from taxation, then they can amend the constitution to do so, just as they did for parsonages. However, the legislature cannot by statute authorize such an exemption because the constitution prohibits it.

No matter what the language of the statute may be, it is the language of the constitution that fixes the boundaries for exemptions from taxation. *Trinity Methodist Episcopal Church*, 201 S.W. at 670. The court's construction of section 11.20(d) effectively renders the statute unconstitutional. It allows for the exemption of property that is not an "actual place of religious

worship." Under article VIII, section 2, such a statute is expressly "null and void."

I would construe the statute in a manner consistent with the constitution and would hold that "all income" includes those revenues which the property's secular use generates for a private for-profit corporation. Such a construction would preclude the possibility that commercial property could be tax exempt. Because there is no fact question remaining, I would reverse the judgment of the court of appeals and render judgment in favor of the taxing authorities.

SPEARS, ROBERTSON and KILGARLIN, JJ., join in this dissent.

their desire to solidify the constitutional mandate against them.

---

1. Whether this extra nail added any real meaning can be debated. It does, however reflect the people's continued distaste for exemptions and