**BEXAR COUNTY APPRAISAL REVIEW BOARD, et al., Appellants,**

v.

**FIRST BAPTIST CHURCH, et al., Appellees.**

No. 04–89–00543–CV.

Court of Appeals of Texas, San Antonio.

Oct. 10, 1990.

Rehearing Denied Nov. 28, 1990.

Dennis K. Drake, Robert E. Etlinger, Law Office of Dennis K. Drake, San Antonio, for appellants.

Robert J. Myers, Willis, Hickey, Hougham & Myers, San Antonio, William W. Kilgarlin, Powell, Popp & Ikard, Austin, for appellees.

Before BUTTS, REEVES and PEEPLES, JJ.

OPINION

PEEPLES, Justice.

Appellants Bexar County Appraisal Review Board and the Bexar Appraisal District (collectively referred to as BCARB) appeal from a judgment based on a jury finding that two parking lots owned by the First Baptist Church of San Antonio (the church) and leased to the Valero Realty Company (Valero) are exempt from property taxes for 1984–1986. The judgment ordered that the value of the property on the appraisal roll be reduced to zero, and decreed that the property is exempt from taxation for the three years. The judgment also awarded the church attorney fees. We reverse and render judgment that the property is not exempt from taxation.

The church is located in downtown San Antonio, across the street from Valero Re-

alty Company, a subsidiary of Valero Energy Corporation. The church has been in its present location since approximately 1905; it acquired the disputed parcels of land piecemeal over a twenty-year period, beginning in 1957. On the subject property are two parking lots near Valero, which are owned by the church but leased to Valero for its use on weekdays from 7:30 A.M. to 5:00 P.M. The lease agreement, signed in 1980, provides that Valero is responsible for the upkeep and maintenance of the lots, and for the payment of all property taxes over and above the 1979 tax rate. The lease permits Valero to park on 407 of 447 spaces during the stated weekday working hours, but reserves to the church the use of the lots at all other times. In 1984–1986 Valero paid the church a rental of more than $111,000 per year.[1]

The church sought an exemption on these lots in 1984, which was denied. It exhausted its administrative remedies and then filed suit for the tax year 1984. The church filed again for an exemption in 1985, which was·granted and then automatically renewed in 1986. In October 1986, BCARB reversed its decision and denied the 1985 and 1986 exemptions that had been granted. The church again exhausted its administrative remedies and filed suit for the tax years 1985 and 1986. Valero was joined as a party over BCARB's objection, and the two suits were consolidated, the church and Valero seeking to reverse the denial of the exemption. The parties stipulated that the market value of the property, if the exemption were denied, exceeded two million dollars. The jury found that the property was entitled to the exemption, and the court rendered judgment on the verdict.

BCARB presents five points of error, complaining that (1) the award of attorney's fees was unauthorized, (2) the court made certain erroneous rulings during trial, (3) the evidence is legally and factually insufficient, (4) the judgment is unconstitutional, and (5) the court erred in its submission of jury question one and its accompanying instructions. In one cross-point, the church and Valero seek damages on the ground that the claim of unconstitutionality is frivolous and was brought for purposes of delay. Because the record does not contain legally sufficient evidence that the parking lots were used primarily for a religious purpose, we reverse and render judgment that they are not exempt from taxation for 1984–1986.

■ BCARB challenges the legal sufficiency of the evidence to support the jury's finding that the church was entitled to the exemption. In particular, BCARB says that there is no evidence that the property is used primarily for religious purposes, as the law requires and as the jury impliedly found.

Section 11.20 of the property tax code provides in pertinent part as follows:

> (a) An organization that qualifies as a religious organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of:
>
> > (1) the real property that [1] is owned by the religious organization, [2] *is used primarily as a place of regular religious worship*, and [3] is reasonably necessary for engaging in religious worship....

TEX.PROP.TAX CODE § 11.20 (Vernon 1982) (emphasis added). The statute further provides that if property otherwise satisfies § 11.20(a), its use "for occasional secular purposes other than religious worship does not result in loss of the exemption if [1] the *primary use of the property is for religious worship* and [2] all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship." *Id.* § 11.20(d) (emphasis added).

The supreme court recently construed these provisions in a parking lot case some-

---

1. During the three years in question, the church received a yearly rental of $111,925, calculated at $275 per space per year for 407 spaces.

what similar to our own. In *City of Austin v. University Christian Church,* 768 S.W.2d 718 (Tex.1988), the court interpreted the statute in the context of a church's rental of land to a commercial parking lot company, while retaining use of the lots on Sundays and at other times. Concerning the statute at issue in the present case, the court held that "place of religious worship" is not limited to the sanctuary:

> For purposes of the tax exemption, a place of religious worship includes not only the sanctuary, but also those grounds and structures surrounding the sanctuary which are necessary for the use and enjoyment of the church.

*Id.* at 719. "Under this definition," continued the court, "a parking lot may qualify as a place of religious worship." *Id.* at 719–20. But in order for the parking lot to be *tax exempt,* its *use* must be "primarily religious" within § 11.20(a)(1):

> Whether a parking lot used in connection with regular religious worship is tax exempt, however, depends on (1) whether the religious organization owns the property, (2) *whether the property's use is primarily religious,* and (3) whether the property's use is reasonably necessary to the religious worship.

*Id.* at 720 (emphasis added). The remainder of the court's opinion stresses the statute's requirement of primary use. Reject-

ing the efforts of both parties to have it decide the issue as a matter of law, the court said that "the property's primary use is, and remains, an issue of fact for the jury." *Id.*[2] In the present case the trial court submitted the exemption question with instructions that stated the law set forth in § 11.20(a) and *University Christian Church.*[3]

Under these authorities, the church had the burden of producing evidence that the use of the parking lots was primarily religious, and our question is whether the record contains such evidence. While the court in *University Christian Church* said that primary use is a jury question, there must of course be legally sufficient evidence of primary religious use before the matter becomes a jury question because the legislature did not authorize courts or juries to grant exemptions without legally sufficient proof of the statutory requirements.

Bearing in mind the standard of review for no-evidence points of error, we consider the evidence in the light most favorable to the verdict. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The evidence of primary use is simple and uncontested. Valero has the right to park in 407 of 447 spaces from 7:30 A.M. to 5:00 P.M. Monday through Friday each week. Church members can use the other forty spaces at any

---

2. On remand the court of appeals held that the evidence was factually sufficient to support the jury finding that the property was not exempt. 789 S.W.2d 361 (Tex.App.—Austin 1990, no writ).

3. Jury question number one read as follows:
   Find, from a preponderance of the evidence, whether the First Baptist Church of San Antonio is entitled to an exemption on the property the subject of this lawsuit.
   We the Jury answer:
   The property should be exempt: [Yes]
   The property should not be exempt:
   ———
   You are instructed that in order to qualify for an exemption that the property must be owned by a religious organization; be used primarily as a place of regular religious worship; and, be reasonably necessary for engaging in religious worship. You are further

instructed that the use of the property for occasional secular purposes other than religious worship does not result in loss of the exemption if the primary use of the property is for religious worship, and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship.
   "Religious worship" means individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage and commitment in behalf of a religious faith.
   You are further instructed that in considering whether the property the subject of this suit should be exempt, that a place of religious worship includes not only the sanctuary, but also those grounds and structures surrounding the sanctuary which are necessary for the use and enjoyment of the Church.

time, and the entire lot is available to them on Saturdays and Sundays and from 5:00 P.M. to 7:30 A.M. during the week. Clearly the lot is *available* for church *access* during a majority of the hours of each week.[4] The only evidence in our record relating to the church's *actual* use of the parking lots was that the lots were used by church members on Sundays in order to attend religious services and on Wednesday evenings to attend a prayer meeting; there was "some" use of the lots for special events and on Saturdays; the lots were rarely used by church members after 7:00 in the evening; and the lots were not used by the church at all after 10:00 in the evening. One church member specifically testified that he could not recall any other religious use of the property (such as for revivals or choir practice) since 1980.

In response to BCARB's argument that Valero uses the lots much more than the church does, the church states that the inquiry is more than a mathematical calculation of the number of hours that it and Valero use the lot. It then notes that if calculation of hours is the issue, it had "total use" of the property a majority of the time. The church also says that the primary use of the property, *from its point of view*, is as a place for its congregation to park, as a buffer against encroachment, and as assurance of adequate room for growth. A secondary use, it says, is "to generate income." The church points to no other evidence of primary religious use, and we have found none. The question therefore is whether (1) access to the lots for a majority of the week plus (2) the fact that the actual use by the church is for religious purposes constitutes some evi-

dence that the property is used primarily for religious purposes.

■ We hold that this evidence is legally insufficient because under the statute and *University Christian Church* the inquiry is the *actual use* of the property, not the church's primary reason for owning it or the amount of theoretical access the church enjoys. When the overall, day-to-day use of the property is considered, it is clear that the property is used almost entirely by Valero. The church does not contend that its right to access from 5:00 P.M. through the night until 7:30 A.M. constitutes evidence of primary religious use. The fact that Valero leaves the lots empty for fourteen and one-half hours each night and gives the congregation the right to enter at night and on weekends does not mean that the lots are being *used primarily for a religious purpose.* Nor is primary religious use proved by evidence that from the church's viewpoint the lots are kept because it is necessary for a downtown church to have parking. Evidence that the church *acquired* the land and *retains* it for member parking and for future growth does not constitute evidence that it *is used* primarily for religious purposes. Whether ownership of the parking lots is necessary for this downtown church pertains to element three under § 11.20(a), and nothing in this opinion is meant to cast doubt on the jury's implied finding on this element. But element three has no bearing on the second element at issue in this appeal—primary use.

■ We stress that the issue before us is *not* whether the church is entitled to *own* property for parking and future growth, or

---

4. The following exchange between counsel for BCARB and a church witness exemplifies the testimony on the issue of primary use (emphasis added):

Q. [Valero is] using the church property. And really, we can say that each and every day of the week we've got nine-and-one-half hours that Valero is using this property, which are the parking lots, Monday through Friday. Now, you agree with that?
A. Yes, sir.

Q. And then, how much time out of the Monday through Friday would you assign to church use, let's say, 5:00 p.m. through the rest of the evening, with the exception of the 40 spaces, which I understand are always reserved for the church?
A. Well, the balance of the day is for church use.
Q. Yes, sir. And are they *actually used* by the church members?
A. They are *available for use.*

whether it can *lease* its property on these or any other terms. We have not sustained BCARB's factual sufficiency challenge to the jury's implied finding that the parking lots were reasonably necessary for engaging in religious worship. No one questions that the church is entitled to own and lease property. The sole issue before this court is whether such property remains tax exempt when there is no proof that it is *used* primarily for religious purposes. A church must make such proof in order to establish a tax exemption under § 11.20. We hold that the record contains no evidence that the two parking lots are used primarily for religious purposes, as the statute requires, and that accordingly the judgment granting the exemption cannot stand.

The judgment ordering the tax exemption is reversed, and judgment is rendered that the lots in question are not exempt from taxation.