Reversed and Rendered and Memorandum Opinion filed August 27, 2009








Reversed
and Rendered and Memorandum Opinion filed August 27, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00528-CV

_______________

 

HARRIS COUNTY APPRAISAL DISTRICT and HARRIS COUNTY
APPRAISAL REVIEW BOARD, Appellants

 

V.

 

PAUL E. NUNU, Appellee

                                                                                                                                         
      

On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2005-42467

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

 








In this
ad valorem property tax case, appellants, the Harris County Appraisal District
(AHCAD@) and the Harris County Appraisal
Review Board (Athe Review Board@), appeal a judgment by which the trial court ordered
appellants to Acorrect the tax rolls@ for 2000 through 2004, Ato reflect a 100% homestead tax
exemption@ for property that appellee, Paul E. Nunu, uses as a residence and an
office (Athe property@).  We conclude, as did HCAD and the
Review Board, that twelve percent of the property is Aused primarily for purposes that are
incompatible with [Nunu=s] residential use.@  Tex. Tax Code Ann. ' 11.13(k) (Vernon 2008). 
Accordingly, we reverse and render judgment reinstating the Review Board=s orders denying Nunu=s protests to HCAD=s reduction of Nunu=s homestead exemption.[1]

I.  Factual and Procedural Background

Nunu
conducts his law practice in the same building in which he and his family
live.  In 2005, HCAD denied Nunu his residential homestead exemption for
approximately twelve percent of the value of the property.  Nunu therefore
received only an eighty-eight percent exemption.  Denial of the 100 percent
exemption was retroactive for the tax years 2000 through 2004.  Nunu protested,
and the Review Board determined he was entitled to only the eighty-eight
percent exemption.  Nunu then appealed to the district court.[2]

Trial
was to the court on an agreed statement of facts.[3] 
The agreed facts included the following:

2.         The subject property is located at 1235 Harvard Street in
The Heights in Houston, Harris County, Texas. . . . .  Nunu acquired the
subject property in 1982 and has owned it since.

3.         The subject property consists of a lot on which there is a 2‑story
house.

4.         On the first floor of the 2‑story house, there is a
hallway, large kitchen, dining room, a formal living room, study, bedroom and a
half‑bath.  The second floor consists of a hallway, 2 bedrooms, 2 baths,
a sitting room and a bedroom used as a den.

5.         During all times relevant to this lawsuit, Nunu and his
family occupied the property as their principle [sic] and only residence.








6.         Nunu is a licensed attorney.  During all times relevant to
this lawsuit, Nunu has used the property as both an urban home and as a place
to exercise a calling or business, that is as his law office.  The portion of
the structure used as an office was open and accessible to the remainder of the
structure during all relevant time periods.

7.         No part of the second floor is used or has ever been used
for Nunu=s law practice.  On the first floor, the dining room
is sometimes used to hold conferences or deposition.  The sitting room houses
Nunu=s hunting trophies and other memorabilia.  Nunu
sometimes interviews clients in the sitting room.  The study is used entirely
for Nunu=s office containing desks, computers, copier and file
cabinets.  The downstairs bedroom has tables, chairs, and a computer.  While
used primarily for conducting Nunu=s
law practice, his daughters and wife also use this area for personal and/or
family matters including homework and school activities.

8.         In 2005, pursuant to Section 11.43(h) and (i) of the Texas
Tax Code, the District=s Chief Appraiser revoked twelve percent (12%) of Nunu=s residential homestead exemption to reflect that
portion of the subject property being used as his law office.  This revocation
applied to tax years 2000B2004 and following.  This left Nunu=s residential homestead exemption intact on the
remaining eighty‑eight percent (88%) of the subject property for each of
those tax years.

. . . .

11.       The subject property qualified as an urban homestead as that
term is defined in '41.002 of the Texas Property Code for each of the
relevant tax years 2000B2004.

12.       Pursuant to 26 U.S.C. '280A(c)(1)(A)
Nunu deducted on IRS tax returns a percentage of his utilities for that portion
of the property used by Nunu for his law office as business expenses for each
of the relevant tax years 2000B2004.

13.       Nunu maintained tangible personal property that was held or
used for the production of income for each of the relevant tax years 2000B2004.  The personal property included property that
was identified on the Harris County Appraisal District appraisal rolls . . . .

 

Based on these facts, the trial court
found Nunu owned and occupied the property as his principal residence.  The
court further ordered appellees to Acorrect the tax rolls for the years
2000, 2001, 2002, 2003, and 2004 and subsequent years if applicable to reflect
a 100% homestead tax exemption for Paul E. Nunu on . . . the real property.@








II.  Standard of Review

The
parties submitted the case to the court on agreed facts.  See Tex. R.
Civ. P. 263.  A[A] case submitted to the court upon an agreed stipulation of facts under
[Rule] 263 is in the nature of a special verdict and >is a request by the litigants for
judgment in accordance with the applicable law.=@  Unauthorized Practice of Law
Comm. v. Jansen, 816 S.W.2d 813, 814 (Tex. App.CHouston [14th Dist.] 1991, writ
denied) (quoting Brophy v. Brophy, 599 S.W.2d 345, 347 (Tex. Civ. App.CTexarkana 1980, no writ)).   The
question on appeal is therefore limited to the correctness of the trial court=s application of the law to the
admitted facts.  Id. at 814B15.  Because the issue is purely a
question of law, we apply a de novo standard of review.  SLW Aviation, Inc.
v. Harris County Appraisal Dist., 105 S.W.3d 99, 102 (Tex. App.CHouston [1st Dist.] 2003, no pet.).

III.  Analysis

In issue
one, appellants argue the trial court incorrectly applied the Tax Code to the
agreed facts by exempting Nunu=s law office from ad valorem taxation.  In issue two,
appellants argue that, because only the governmental body of a taxing unit can
change a tax roll, the trial court erred in ordering HCAD to correct the tax
rolls.  For the reasons below, we sustain appellants= first issue.  We therefore need not
address their second issue.

Texas
Constitution Article VIII provides the legal authority for imposing ad valorem
taxes and exempting residence homesteads from taxation.  See Tex. Const.
art. VIII, '' 1, 1‑b.  The constitution requires taxation to Abe equal and uniform.@  Id. ' 1.  Courts therefore narrowly and
strictly construe claims for tax exemptions.  Davies v. Meyer, 541
S.W.2d 827, 829 (Tex. 1976).  As the San Antonio Court of Appeals recently
explained:








It has long been established that exemptions from taxation are strictly
construed and that all doubts are resolved against the exemption.  See N.
Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894,
899 (Tex. 1991) (holding that A[s]tatutory
exemptions from taxation are subject to strict construction because they
undermine equality and uniformity by placing a greater burden on some taxpaying
businesses and individuals rather than placing the burden on all taxpayers
equally@); see also Hilltop Village, Inc. v. Kerrville Ind.
Sch. Dist., 426 S.W.2d 943, 948 (Tex. 1968) ( Atax exemptions are subject to strict construction
since they are the antithesis of equality and uniformity@).  Accordingly, an exemption cannot be raised by
implication, but must be affirmatively shown, resolving all doubts in favor of
the taxing authority and against the claimant.  Bullock v. Nat=l Bancshares Corp., 584 S.W.2d 268, 272 (Tex. 1979).

 

Jim Wells County
Appraisal Dist. v. Cameron Village, Ltd., 238 S.W.3d 769, 772 (Tex. App.CSan Antonio 2007, pet. filed); see
also City of Austin v. Univ. Christian Church, 768 S.W.2d 718, 721B22 (Tex. 1988) (Mauzy, J.,
dissenting) (explaining history of strong sentiment against exemptions and
constitutional response to exemptions).

Texas
Tax Code section 11.13 sets forth the residence homestead exemption and defines
Aresidence homestead@ as:

a structure (including a mobile home) or a separately secured and
occupied portion of a structure (together with the land, not to exceed 20
acres, and improvements used in the residential occupancy of the structure, if
the structure and the land and improvements have identical ownership) that:         

(A) is
owned by one or more individuals, either directly or through a beneficial
interest in a qualifying trust;

(B) is designed or adapted for human residence;

(C) is used as a residence;  and

(D) is occupied as his principal residence by an owner . . . .

 

Tex. Tax Code Ann. ' 11.13(j)(1) (Vernon 2008).

Subsection
(k) then describes the effect multiple uses of a residence have on the
homestead exemption:








A qualified residential structure does not lose its character as a residence
homestead if a portion of the structure is rented to another or is used
primarily for other purposes that are incompatible with the owner=s residential use of the structure.  However, the
amount of any residence homestead exemption does not apply to the value of that
portion of the structure that is used primarily for purposes that are
incompatible with the owner=s residential use.

 

Id. ' 11.13(k) (emphasis added).

The
question in the present case, therefore, is whether Nunu uses any portion of
his residence Aprimarily@ for a purpose Aincompatible@ with Aresidential@ use.  Accordingly, we must construe
section 11.13(k) to determine how it applies to Nunu=s use of the property.  In doing so,
we are guided by the Code Construction Act.  See id. ' 1.03 (stating Code Construction Act
applies to the Texas Tax Code).

APrimarily,@ Aincompatible,@ and Aresidential@ are not defined in the Tax Code.  We therefore read these
words in context and construe them according to common usage.  Tex. Gov=t Code Ann. ' 311.011(a) (Vernon 2005).  Additionally, whether or not the
statute is ambiguous on its face, we may consider, among other matters, the
object to be attained, administrative construction of the statute, and the
consequences of a particular construction.  See id. ' 311.023.

In
common usage, Aprimarily@ means Afundamentally,@ Aprincipally,@ or Ain the first place.@  Webster=s Third New International Dictionary 1800 (1993).  AResidential@ refers to a building serving as a
residence, a dwelling place, or a home.  See id. at 1931.  AIncompatible@ refers to an incapability of
existing together without discord or disharmony.  See id. at 463, 1114. 
AIncompatible@ may also refer to a situation
involving mutually inconsistent demands.  See id. at 1114.   In the
context of physical space, therefore, incompatible would refer to uses that
could not occur harmoniously in the same space, uses  such as intimate family
conversations and client conferences or loud children=s play and legal study.








In the
present case, Nunu agreed he Asometimes@ held conferences or depositions in the dining room and Asometimes@ interviewed clients in the sitting
room.  In the United States, the home is generally associated with the freedom
to engage in private conduct in which one would not engage before strangers or
business acquaintances.  It is reasonable to conclude that, when Nunu was using
the dining room and sitting room to accommodate business acquaintances or
strangers to the family, such use was incompatible with residential use.

Nunu
also agreed he used the downstairs study Aentirely@ for his office and used the
downstairs bedroom Aprimarily@ for conducting his law practice.  By virtue of Nunu=s own agreement and the common
definitions of the statutory terms, at a minimum, the downstairs study and
bedroom were used primarily for purposes that are incompatible with Nunu=s residential use.

The
preceding interpretation and application of the statute are also consistent
with a an attorney general=s opinion and the authority cited therein, particularly
interpretations by the comptroller of public accounts.  In that opinion, the
Texas Attorney General concluded rental constituted a purpose Aincompatible with the owner=s residential use.@  The attorney general reasoned:








The first
sentence of subsection (k) provides that a qualified residence does not lose
its homestead character Aif a portion of the structure is rented
to another or is used primarily for other purposes that are
incompatible with the owner=s residential use of the
structure.@  Tex. Tax Code Ann. ' 11.13(k) (Vernon Supp. 2001) (emphasis added).  The second sentence
provides that Athe amount of any residence homestead exemption does
not apply to the value of that portion of the structure that is used
primarily for purposes that are incompatible with the owner=s residential use.@  Id.
' 11.13(k) (emphasis added).  Rental of a portion of
the structure to another, in the first sentence, is equated with use of the
structure Aprimarily for purposes that are incompatible,@ given use of the term Aother@ qualifying the latter phrase.  See Osterberg [v.
Peca, 12 S.W.3d 31, 38 (Tex. 2000)] (legislative intent discerned from
actual language used); Tex. Gov=t Code Ann. ' 311.011(a) (Vernon 1998) (words and phrases are to be
Aread in context and construed according to the rules
of grammar and common usage@).  The second
sentence then disallows the exemption for that portion of the homestead used
for incompatible purposes. Because rental is equated with incompatible purposes,
the second sentence necessarily disallows the exemption for the portion that is
rented.  See also Carole Keeton Rylander, Comptroller of Public
Accounts, Texas Property Taxes: Taxpayer=s
Rights, Remedies & Responsibilities, at 2 (Jan. 2000) (ARenting part of your home or using part of it for a
business doesn=t disqualify the rest of your home for the
exemption.@) (emphasis added); Carole Keeton Rylander,
Comptroller of Public Accounts, Texas Property Tax: Appraisal Review Board
Manual, at 24 (2000) ( ANormally the exemption applies to those portions of
the house actually used for residential, as opposed to business, purposes.@).

Our construction above comports with the homestead‑exemption
provisions of section 11.13 (j), (k), and (l). See Jones v. Fowler, 969 S.W.2d
429, 432 (Tex. 1998) (legislative intent to be determined from entire act not
simply isolated portion of act); Sayre [v. Mullins, 681 S.W.2d
25, 27 (Tex. 1984)] (statute to be read as a whole, giving consideration to
entire act, its nature and object, and consequences that would follow from
particular construction). The apparent purpose of section 11.13 is to exempt
from taxation a residence that the owner uses as his home, in other words,
where the owner lives.  See Tex. Tax Code Ann. ' 11.13(j) (Vernon Supp. 2001) (Aresidence homestead@ is
Aused as a residence@ and
Aoccupied as his principal residence by an owner@); id. '
11.13(l) (residence homestead does not lose that status if owner is temporarily
absent, does not establish different principal residence, and intends to return
to residence and use it as principal residence).  Keeping with this apparent
intent, subsection (k) preserves the tax exemption, even if a part of the
residence is not used primarily as the owner=s
home, but only with respect to that part that the owner continues to use
primarily as his or her home.

 

Op. Tex. Att=y Gen. No. JC‑0415, 2001 WL
1141874, at *5B6 (2001).  Implicit in this interpretation, and explicit in the cited
authority, is the principle that business use of a designated space is
incompatible with residential use of the same space.

Finally,
the conclusion that Nunu used portions of his residence for purposes
incompatible with his residential use is consistent with Nunu=s own reporting on his federal tax
returns.  Nunu agreed that, during tax years 2000 through 2004, he deducted, as
a business expense, a percentage of his utilities for that portion of the
property he used for his law office.  He did so pursuant to 26 United States
Code section 280A, which provides in relevant part:








(a) General
rule.BExcept as otherwise provided in this section, in the
case of a taxpayer who is an individual or an S corporation, no deduction
otherwise allowable under this chapter shall be allowed with respect to the use
of a dwelling unit which is used by the taxpayer during the taxable year as a
residence.

           . . . . 

(c)
Exceptions for certain business or rental use; limitation on deductions for
such use.B

(1)
Certain business use.BSubsection (a) shall not apply to any item to the
extent such item is allocable to a portion of the dwelling unit which is
exclusively used on a regular basisB

(A) as the
principal place of business for any trade or business of the taxpayer, [or]

(B) as a
place of business which is used by patients, clients, or customers in meeting
or dealing with the taxpayer in the normal course of his trade or business . .
. .

 

26 U.S.C.A. ' 280A(a), (c)(1), (A), (B) (West
2002).  Thus, to have claimed a federal income tax deduction for utilities for
a portion of his residence, Nunu was required to have Aexclusively@ used that portion Aon a regular basis@ for business purposes.  Exclusive
use of a designated space for business purposes necessarily means that space is
not being used for residential purposes.








Nunu,
however, relies on the following definition of Ahomestead@ found in Texas Property Code section
41.002(a):  AIf used for the purposes of an urban home or as both an urban home and
a place to exercise a calling or business,@ the Ahomestead@ consists of not more than ten acres
of one or more contiguous lots and the improvements on those lots.   Tex. Prop.
Code Ann. ' 41.002(a) (Vernon 2000). (emphasis added).  Citing section 41.002(c),
Nunu observes the foregoing definition Aapplies to all homesteads in this
state whenever created.@  Id. ' 41.002(d).  Nunu then argues his business use of his
homestead Ais expressly authorized and cannot be incompatible [with residential use]
as a matter of black letter law.@[4]

Nunu,
however, overlooks the different policies and protections reflected by the
homestead exemptions in the Property and Tax Codes, respectively.  In Hutson
v. Tri-County Properties, LLC, a case involving an attempted redemption of
property after a tax sale, the court rejected the appellant=s arguments that the property code=s definition of Ahomestead@ was irreconcilable with the tax code=s definition of Aresidence homestead@ and that the trial court, in
determining the appropriate redemption period, should have applied the property
code=s definition instead of the tax code=s.  240 S.W.3d 484, 488B89 (Tex. App.CFort Worth 2007, pet. denied).[5] 
The court explained:

The
Constitution itself treats property differently depending on whether it is
being sold to pay the owner=s debts or to
pay taxes on the property.  And nothing in the Constitution prevents the
Legislature from defining what property may be kept from forced sale
differently from property that may be redeemed after the sale, especially when
the protection from forced sale (by general creditors) and opportunity for
redemption (after a tax sale) arise in very distinct circumstances.








Because the Constitution does not require that Ahomestead@
and Aresidence homestead@ be
defined the same, and because it does not define the term Aresidence homestead,@ the Legislature was free to provide such a definition.  It did so in
Texas Tax Code section 11.13(j)(1).  Because the protection given to a Ahomestead@
(the prevention of a forced sale to pay general debts) and the protection given
to a Aresidence homestead@
(allowing for redemption after the Constitution‑sanctioned tax sale)
arise in distinct contexts, the definition of Ahomestead@ in the property code and the definition of Aresidence homestead@ in
the tax code are not irreconcilable.  The trial court therefore did not err by
relying on the definition of Aresidence
homestead@ in the tax code rather than the definition of Ahomestead@
found in the property code.

 

Id.

Just as
the Hutson court declined to apply the property code homestead
definition to a situation involving a tax sale, we decline to apply the
property code definition to an ad valorem tax exemption.  As discussed above,
given the Texas Constitution=s requirement of equal and uniform taxes, we construe tax
exemptions narrowly.  That exercise of one=s calling or business in one=s Aurban home@ does not nullify the exemption of
that home from seizure for creditors= claims does not mean that a taxpayer
using part of his home for business purposes should be treated differently from
a taxpayer who conducts his business in a building separate from his home or
that he should be treated the same as a taxpayer who uses his entire home
exclusively for purposes consistent with residential use.

For the preceding reasons, we sustain appellants= first issue.  Accordingly, we reverse and render
judgment reinstating the Review Board=s
orders denying Nunu=s protests to HCAD=s
reduction of Nunu=s homestead exemption.  We therefore need not address
appellants= second issue, directed at the trial court=s order directing appellees to Acorrect the tax rolls.@ 

 

 

 

/s/        Charles W. Seymore

Justice

 

 

Panel
consists of Justices Seymore, Brown, and Sullivan.









[1]  Because the dispositive issues are clearly settled
in law, we issue this memorandum opinion.  Tex. R. App. P. 47.4.





[2]  See Tex. Tax Code Ann. ' 42.01 (Vernon 2008).





[3]  See Tex. R. Civ. P. 263.





[4]  Nunu also argues that, because no part of the
property is Aa separately secured and occupied portion of the
structure,@ Tex. Tax Code Ann.
' 11.13(j)(1), all of the property therefore qualifies
for the residence homestead exemption.  Section 11.13(k), however, specifically
carves from the exemption for a Aqualified
residential structure,@ the value Aof
that portion of the structure@ used primarily
for purposes incompatible with residential use.  Id. ' 11.13(k).  There is no requirement in section
11.13(k) that the portion of the structure be separately secured and occupied
for that portion to be capable of use for purposes incompatible with
residential use.





[5]  The statute providing for redemption after a tax
sale uses the definition of Aresidence
homestead@ found in Tax Code section 11.13(j)(1).  Tex. Tax Code
Ann. ' 34.21(g)(4) (Vernon 2008).