In Re: Appeal of The Open Door Baptist Church From the Decision of the Board of Assessment Appeals of Lehigh County.

The Open Door Baptist Church, Appellant.

Argued November 20, 1981, before Judges WIL-LIAMS, JR., MACPHAIL and PALLADINO, sitting as a panel of three.

*Charles E. Craze,* with him *Michael J. Manuszak, Gibbs & Craze,* and *Daniel K. McCarthy, Efron, Black, Epstein and McCarthy,* for appellant.

*Alfred K. Hettinger,* Assistant County Solicitor, with him *John E. Roberts,* County Solicitor, and *David G. Welty,* for appellee.

OPINION BY JUDGE MACPHAIL, December 18, 1981:

Open Door Baptist Church (Church), an independent fundamentalist congregation, in July of 1976 bought 10.879 acres of land in Lower Macungie Township, Lehigh County. The Church paid taxes on its real estate until September of 1978, at which time the entire tract was dedicated to the "Lord Jesus Christ." The Church then appealed its real estate tax assessment to the Board of Assessment Appeals (Board)

which granted a partial exemption for the land actually used for church purposes. That decision was appealed to the Court of Common Pleas of Lehigh County which affirmed the Board. An appeal to this Court followed.

It appears from the record that the Board exempted 3.3 acres of the total tract. The exempt property includes the building, parking lot, roadway, septic system area and the lawn in front of the Church. The pastor, the only witness who testified, stated that the Church held outdoor services once or twice a year on the side lawns, that part of the land is cultivated and the rest is in lawn. The witness freely admitted that all of the land is not actually used for church purposes but that it is available for such use. He also testified that the Church had plans to expand its facilities some time in the indefinite future.

Of primary relevance is Section 204(a)(1) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204(a)(1) which states in pertinent part:

> (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
> (1) All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same;
> . . . .

From the evidence presented to the trial court, we have no doubt that the Board and the court reached the correct result when they found that the Church had failed to prove that the land found to be non-exempt was used exclusively as an actual place of regularly stated religious worship. Our case law is that only that part of a church's real estate which is

necessary for the occupancy and enjoyment of the church building is entitled to exemption and unless the entire lot is used for such purposes, it is not entitled to exemption. *Wynnefield United Presbyterian Church v. City of Philadelphia,* 348 Pa. 252, 35 A.2d 276 (1944); *First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 20 A.2d 209 (1941); *Gibbons v. District of Columbia,* 116 U.S. 404 (1886). Indeed, the Church, neither in its brief nor in its oral argument, made any substantial effort to contest that aspect of the case.

The Church's principal contention, however, which was raised before but not addressed by the trial court, is based on its unique belief that once the real property was dedicated to the Lord, the Church no longer "owned" it but rather held it in trust for the Lord. The Church then contends that paying taxes on this property would violate the religious beliefs of the members of the Church and thus constitutes a violation of their First Amendment right under the United States Constitution to the free exercise of their religion. In this connection, it may be appropriate to note that the Church *did* pay taxes on this real estate for more than two years prior to the "dedication."

In *Walz v. Tax Commission,* 397 U.S. 664, 669 (1970), the United States Supreme Court stated that it would not tolerate either governmentally established religion or governmental interference with religion but that between those two prohibitions there was "room for play in the joints." That Court also said that tax exemption for church property is a reasonable and balanced attempt to guard against the latent dangers inherent in the imposition of property taxes. In the instant case, the Church cites no case law which would hold (a) that property deeded to a church does not, in fact, belong to the church—as opposed to a Divine Being or (b) that a church's belief that it should not

pay taxes on its real estate entitles it to an exemption to all of its real estate whether or not used for religious purposes. While the cases in the United States Supreme Court are legion interpreting the so-called "establishment" and "free exercise" clauses as they might apply to different factual situations, we have found none which have addressed either of the Church's contentions now before us.

It has been said that:

The application to particular factual situations of the general rules relating to the establishment and free exercise provisions of the First Amendment, simplistic as they appear to be in the abstract, has involved a complex pattern of turns and twists of legal reasoning, cutting across almost all facets of human life. In every instance, the courts have engaged in a balancing and sifting of interests. (Footnotes omitted.)

16-A Am. Jur. 2d *Constitutional Law* §478.

We have no doubt about the sincerity of the Church's conviction that once real estate has been dedicated to the Lord, it truly belongs to that Divine Being. We have considerable doubt, however, that such a dedication is sufficient to bring the entire tract of real estate in question within the exemption provisions of our property tax laws. As we have previously noted, it is only when the entire tract is actually used for church purposes that an exemption will be granted for the entire tract. The reason for the limitation is quite sound. The imposition of a tax on property actually used for church purposes could, if sufficiently burdensome, act to prohibit the free exercise of religion; but the imposition of a tax on property not actually used for religious purposes, could not in any way interfere with the free exercise of religion.

While a church in this free country can adopt any belief it desires, where any of those beliefs tend to sub-

vert the civil government or infringe upon a compelling state interest, the state may lawfully intervene to the degree necessary to preserve peace and good order. 16-A Am. Jur. 2d *Constitutional Law* §473 (1970). Freedom and order are compatible. Nowhere has it yet been held that one may, solely by virtue of his religious beliefs, exonerate himself from the payment of taxes. Neither has it been held that a church may proclaim that property it owns is exempt from taxation solely because the payment of such taxes would be offensive to its religious doctrines. Again, the reason why such exemptions have been narrowly proscribed by taxing authorities is quite sound. Governments depend upon tax revenues to furnish services essential for the welfare of all people.[1] If churches or individuals could, by self-proclamation avoid the payment of taxes, good order in this country would be in jeopardy. In the instant case it has not been shown that the imposition of tax on the real estate of the Church which is not necessary for church purposes is discriminatory, an impermissible intervention in the affairs of the church or an arbitrary exercise of police power. Rather, the church has been accorded all of the tax benefits to which it is entitled under the tax laws of the Commonwealth and the Constitutions of the United States and of the Commonwealth.

In summary, we must reject the Church's attempt to extend a tax exemption for real estate owned by it and actually used by it for church purposes, to real estate owned by it but which is not necessary for the occupancy and enjoyment of the church building or for religious purposes.

Order affirmed.

---

[1] Even the Bible, quoted by the witness to the trial court, says unequivocally, "Render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's." St. Matthew, 22:21.

298

ORDER

AND Now, this 18th day of December, 1981, the order of the Court of Common Pleas of Lehigh County entered October 29, 1980, is affirmed.