**FIRST BAPTIST CHURCH OF SAN ANTONIO, et al., Petitioners,**

v.

**BEXAR COUNTY APPRAISAL REVIEW BOARD, et al., Respondents.**

No. D–0689.

Supreme Court of Texas.

June 10, 1992.

William Kilgarlin, Austin, Robert J. Myers, San Antonio, Sharmyn K. Lumsden, William Ikard, Austin, for petitioners.

Dennis K. Drake, San Antonio, for respondents.

## OPINION

HIGHTOWER, Justice.

In this property tax exemption case, we consider whether there is some evidence to support a jury finding that two parking lots owned by First Baptist Church of San Antonio and leased to Valero Realty Company qualified for a property tax exemption. The trial court rendered judgment that the parking lots were exempt from property taxes. The court of appeals reversed and rendered, holding that the parking lots were not tax-exempt because there was no evidence that the parking lots were primarily used for religious purposes. 800 S.W.2d 892. We reverse and remand this cause to the court of appeals for further proceedings.

First Baptist Church of San Antonio ("the church") is located in downtown San Antonio, across the street from Valero Realty Company ("Valero"). The church owns two parking lots which it leased to Valero pursuant to a ten year agreement signed in 1980. The lease permitted Valero employees and visitors to use 407 of the 447 spaces from 7:30 a.m. to 5:00 p.m. Monday through Friday, but reserved use of the parking lots to the church at all other times. Valero paid a monthly fee to

the church[1] and was responsible for maintenance and upkeep of the parking lots, and for payment of all property taxes above the amount set in 1979.

The church sought exemptions on these parking lots in 1984, 1985 and 1986. After the exemptions were denied, the church exhausted its administrative remedies and filed suits against the Bexar County Appraisal District and Review Board for the tax years 1984, 1985 and 1986. Valero filed a plea in intervention and the suits were consolidated for trial.

The jury found that the parking lots were tax-exempt,[2] and the trial court rendered judgment on the verdict. The court of appeals reversed and rendered, holding that there was no evidence that the parking lots were primarily used for religious purposes to justify a tax exemption.

### I.

Section 11.20 of the Texas Tax Code establishes the criteria for determining if a religious organization qualifies for a tax exemption. Section 11.20(a)(1) provides that a religious organization is entitled to an exemption from taxation of "the real property that is owned by the religious organization, is used primarily as a place of regular religious worship, and is reasonably necessary for engaging in religious worship...." Tex.Tax Code Ann. § 11.-20(a)(1). Section 11.20(d) provides that if property satisfies the requirements of section 11.20(a)(1), its use "for occasional secular purposes other than religious worship does not result in loss of the exemption if the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship." Tex. Tax Code § 11.20(d).

■■■ "For purposes of the tax exemption, a place of religious worship includes not only the sanctuary, but also those grounds and structures surrounding the sanctuary which are necessary for the use and enjoyment of the church." *City of Austin v. University Christian Church,* 768 S.W.2d 718, 719 (Tex.1988).[3] Thus, a parking lot may qualify as a place of religious worship. *Id.* at 719–20. But whether a church parking lot is tax-exempt depends on whether the requirements of section 11.20(a)(1) are met. Although Bexar County Appraisal District and Review Board raised other points of error, the court of appeals held that there was no evidence that the parking lots were primar-

---

1. Valero paid the church $111,925 per year from 1984 through 1986. This was calculated at $275 per parking space per year for 407 spaces.

2. In accordance with broad-form submission practice, the trial court properly submitted the issue to the jury as a broad question which asked whether the church was entitled to a tax exemption on the parking lots. The broad-form question was accompanied by instructions stating, among other things, the statutory requirements of section 11.20(a)(1) of the Texas Tax Code that had to be met in order for the church to qualify for an exemption. In finding that the church was entitled to an exemption, the jury implicitly found that the church met the statutory requirements of section 11.20(a)(1).

3. In *University Christian Church,* the church owned two parking lots which it leased to Allright Parking. *University Christian Church,* 768 S.W.2d at 719. Under the terms of the lease, the church retained exclusive use of the parking lots on Sundays and was allowed to use the lots on various other occasions. *Id.* The church received a monthly fee from Allright Parking, as well as a percentage of Allright Parking's gross receipts from its use of the parking lots. *Id.*

The City of Austin and other taxing authorities sued the church to collect delinquent ad valorem taxes levied on the parking lots. The trial court rendered judgment for the taxing authorities based on the jury's failure to find that the property was primarily used for religious worship. *Id.* at 718. The court of appeals reversed and rendered judgment for the church, holding that the evidence conclusively established the property was used primarily for religious worship. 724 S.W.2d 94 (Tex.App.—Austin 1986). This Court held that the court of appeals erred in concluding, as a matter of law, that the church's parking lots were primarily used for religious worship, and remanded the case to the court of appeals to consider the factual sufficiency of the evidence. *University Christian Church,* 768 S.W.2d at 720–21. On remand, the court of appeals held that the jury's failure to find that the parking lots were used primarily for religious worship was not so against the great weight and preponderance of the evidence as to be manifestly unjust. *University Christian Church v. City of Austin,* 789 S.W.2d 361, 366 (Tex.App.—Austin 1990, no writ).

ily used for religious purposes, and reversed and rendered judgment against the church. Consequently, the only issue before this Court is the primary use of the parking lots.

## II.

■ The church argues that there is evidence that the parking lots were used primarily for religious purposes. After a review of the record, we agree.

■ In determining whether there is any evidence to support a jury finding, we consider only the evidence and inferences tending to support the jury finding and disregard all evidence to the contrary. *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 377 (Tex.1984); *see Murphy v. Hammons*, 509 S.W.2d 845, 846 (Tex.1974). If there is any evidence of probative value to support the jury's finding that the parking lots were primarily used for religious purposes, the jury's finding must be upheld. *Lucas*, 696 S.W.2d at 377.

■ In ascertaining whether there is any evidence that the parking lots were primarily used for religious purposes, we look beyond a mere mathematical calculation of the number of hours the church and its members physically occupied the parking lots versus the number of hours Valero physically occupied the parking lots. While the "actual use" of the property is an important factor in determining primary use, it is not the sole consideration. Instead, the use of the church property must be examined qualitatively as well as quantitatively. Thus, the primary use of church parking lots may not be determined by simply adding up the number of hours that church members actually park their cars on the lots.

At trial, the jury heard testimony that the property on which the two parking lots

are located was purchased by the church to ensure adequate parking for church members attending church activities. In fact, several witnesses indicated that the church's primary use of the two parking lots was to provide church members with access to church facilities. The church reserved forty parking spaces for the exclusive use of its members, and reserved the remaining spaces for church use at all times except weekdays from 7:30 a.m. to 5:00 p.m. The church also had the right to use the parking lots on holidays observed by Valero. The parking lots were regularly used by church members on Sundays and Wednesday evenings, and sometimes used by church members on Saturdays and for special events throughout the week. Therefore, we hold that there is some evidence to support the jury's finding that the parking lots were used primarily for religious purposes.

■ The Bexar County Appraisal District and Review Board advanced several other points of error in the court of appeals but that court did not consider them because of its erroneous conclusion that the record contained no evidence that the parking lots were used primarily for religious purposes. We have the option of either examining the points of error not considered by the court of appeals in order to determine if any of those points will support the court of appeals' judgment or remanding the cause to the court of appeals for it to pass on the unconsidered points. *See Coulson v. Lake LBJ Municipal Utility District*, 734 S.W.2d 649, 652 (Tex.1987). Because the unaddressed points of error include attacks on the sufficiency of the evidence, we believe judicial economy is best served by remanding the entire cause to the court of appeals for consideration of all previously unaddressed points.[4] *Id.*

---

4. The previously unaddressed points include whether the church was entitled to attorney's fees, whether the trial court's rulings denied BCAD a fair trial, whether there was legally or factually insufficient evidence to support the jury's finding on issues other than the primary use of the property, whether there was factually insufficient evidence to support the jury's finding on the primary use issue, whether the trial court's judgment violates certain provisions of the United States Constitution or the Texas Constitution, whether the trial court erred in submitting the question and instructions concerning the church's right to an exemption, and the church's cross-point concerning delay damages.

Accordingly, we reverse and remand the cause to the court of appeals.

COOK, J., concurs.

MAUZY, J., dissents, joined by DOGGETT and GAMMAGE, JJ.

COOK, Justice, concurring.

Today the court adopts a reasonable and practical approach to the problem of determining primary use of a place of religious worship. It is a fair approach, one which does not stretch the exemption beyond the constitutional limit or beyond the intent of the legislature. It is an approach which offers appraisal districts common sense guidance to the task of applying the concept of "primary use." And it does not, as the dissent would do, confine the exemption so narrowly as to eradicate it altogether.

Many states have grappled with the definition of "use" in statutes similar to ours. Most of these states apply a rule of strict construction to their exemption statutes. *See, e.g., Church Divinity School v. Alameda County*, 152 Cal.App.2d 496, 314 P.2d 209, 211–12 (Cal.Ct.App.1957). Entities claiming the exemption must show that they clearly come within the terms of the exemption. *Id.* 314 P.2d at 212. Yet, even in the states which grant exemptions based only upon "exclusive use," the courts have recognized that a relentlessly narrow interpretation of the term "exclusive use" would destroy the exemption. Consequently, these states have adopted a statutory interpretation based upon reasonableness. *See, e.g., id.* at 212–14 (construction of statute must be reasonable one with due regard for ordinary meaning of language employed and object sought to be accomplished); *Lutherans Outdoors in South Dakota, Inc. v. South Dakota Bd. of Equalization*, 475 N.W.2d 140, 143 (S.D. 1991) (whether property is used exclusively for religious purposes is to be construed reasonably).

The constitution and the statutes of our own state "evince a liberality in the exemption from taxation of property for educational or religious purposes." *Harris v. City of Fort Worth*, 142 Tex. 600, 180 S.W.2d 131, 133 (1944). This liberality is particularly evident in the current statute granting a tax exemption for real property used primarily as a place of regular religious worship, as long as it is reasonably necessary for engaging in religious worship. Tex.Tax Code Ann. § 11.20(a)(1) (Vernon Supp.1992). Section 11.20(a)(1) grants the exemption based on *primary use*, not *exclusive use*. That the legislature chose the word "primarily" intentionally and carefully is made clear by comparison to section 11.20(a)(3), which grants an exemption based on *exclusive use* to real property used as a church residence. *Id.* at § 11.-20(a)(3).

Notwithstanding our state's consistent historical support of tax exemptions for religious organizations, the dissent displays a hostile attitude toward the tax exemption at issue in this case. The dissent's unforgivingly narrow construction of the word "use," demands that "use" of a parking space can mean only that the space be actually occupied for religious purposes. Such a construction would surely result in loss of an exemption for almost every church facility in the state. For no church actually occupies its real property twenty-four hours a day, either for strictly religious or any other purpose. Every church sanctuary, every adjoining church building, and every church parking lot are vacant many hours during the week.

Are we really to say that these facilities should lose their exemptions because they are not actually used for religious purposes most of the hours of the day? Are we really to demand that church parking spaces be actually occupied for religious purposes most of the time? That kind of thinking would demand that the church in this case either pay taxes or resort to extraordinary measures to insure that each parking space be not only reserved, but actually used for church purposes only. I have an image of the church fencing the lot to prevent unauthorized use by the work force of a congested downtown area. And I can see tax appraisers standing over a set of parking spaces, calculating the number of hours each space is occupied for reli-

gious purposes, commercial purposes, or not used at all. Surely we must reject any statutory interpretation which logically concludes in such impractical demands.

I believe it far more sensible to follow the approach of our court in today's opinion. In it, we echo the logic and the sentiments of the Florida Supreme Court in a case remarkably similar to the one we now face. *Central Baptist Church of Miami Florida, Inc. v. Dade County,* 216 So.2d 4 (Fla.1968). In *Central Baptist Church,* the court explained that the church owned an entire city block in downtown Miami. A large part of the church facility was devoted to parking. Some parking spaces were reserved at all times for church personnel, and all parking was dedicated for use by church members during the evenings and on Sundays. During weekday business hours, the rest of the parking area was rented out as a commercial parking lot. The net income from the lot was devoted by the church to its world missions and its education program.

The controlling Florida statute in *Central Baptist Church* was consistent with the state constitution in providing for tax exemptions for "houses of public worship." *Id.* at 5. The statute expressly prohibited exemptions for "any building being a house of worship which shall be rented or hired for any other purpose except for schools or places of worship...." *Id.* at 5–6. These facilities, continued the statute, "shall be taxed the same as any other property." *Id.* at 6. The court focused on use in interpreting the statute, deciding that it granted a general statutory exemption of property

"used for church or religious purposes." *Id.*

In deciding how the statute should affect the peculiar problem of the downtown church, the court asked what the legislature tried to do when drafting the statute. The court focused on the limited nature of the rental and on the fact that the portion of the lot rented did not place that portion beyond the regular and customary church use. *Id.* The court distinguished between the situation presented by the case and hypothetical situations where church property might be held by private persons for speculative purposes or rented for a non-worship or nonschool purpose. These situations would represent significant diversions from church use and would justify loss of the exemption. "However," stated the court, "lesser and more limited divergent uses of church property are apparently not deemed by the Legislature sufficiently inconsistent with church purposes to lift the exemption, provided the funds derived from such uses are not diverted to purposes not contemplated by [the constitution]." *Id.* The court added:

[T]he limited part time rental of a portion of the church lot for commercial parking on weekday business hours is reasonably incidental to the primary use of the church property as a whole for church or religious purposes and is not a sufficiently divergent commercial use that eliminates the exemption as to the commercial parking lot portion of the property.

*Id.*[1]

I wish to suggest why the people of our state have insisted, in both constitution and statute, on granting tax exemptions to

1. The statute which this opinion construes is no longer in existence. The statute was altered by the Florida legislature after litigants challenged the statute in a lawsuit based on federal constitutional grounds. The statute was never stricken by the federal courts. In fact, the statute's constitutionality was sustained in federal district court. *See generally Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.,* 316 F.Supp. 1116 (S.D.Fla.1970), *vacated as moot,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). The suit was awaiting decision by the United States Supreme Court when the legislature made the change. That Court remanded the case to the district court so the litigants could amend their pleadings to attack the new statute. 404 U.S. at 415, 92 S.Ct. at 576.

The Florida Supreme Court's *Central Baptist Church* opinion construes the law of Florida as it existed at the time and, to that extent, the opinion remains good law. Our current statute is similar to the old Florida statute. The facts we face today bear a remarkable resemblance to those the Florida court faced. And, like that court, we face no federal constitutional challenge. The thoughtful reasoning of the Florida Supreme Court helps understand the particular problems facing us as we consider the meaning of our own statute and the facts of our own case.

churches such as the one in this case. Churches, and downtown churches in particular, do something more than occupy valuable downtown real estate. Downtown churches offer a source of calm and hope to the frenzied workers of the commercial district. They often serve the poor and the homeless of poverty-stricken downtown areas, providing shelter, food for the hungry, and counseling. Downtown churches are often beautiful to behold. They uplift. They are frequently ancient, serving as historical reminders of the courage which sustained our forebears as they constructed our cities. For the services they provide, these churches do not charge the public, nor do they make a profit. Instead, they dedicate all funds into the church and its work.

For many years, these factors have contributed to the public's decision to spare churches from the burden of taxation. It is not unreasonable for us, given the people's preference, to offer this downtown church every opportunity to prove that it complies with the terms of the statute and is entitled to the exemption.

Accordingly, I concur in the judgment of the court.

MAUZY, Justice, dissenting.

Today the court considers whether a parking lot owned by a church is "used primarily as a place of regular religious worship," when 91 percent of the lot's spaces are leased exclusively to a commercial enterprise from 7:30 a.m. to 5:00 p.m., Monday through Friday. Incredibly, the majority upholds a finding that the property is used primarily for religious purposes, despite a total absence of evidence to that effect. This holding gives an enormous tax break to virtually any business enterprise

that is associated with a religious organization.

The issue in this case is not whether religious institutions deserve favorable tax treatment. No one doubts the value of the services provided by religious institutions in general, and by urban houses of worship in particular. Nor does anyone suggest that actual places of worship should be taxed. I do suggest, though, that a private business should not be allowed to profit from an exemption that was intended to shield religious worship from taxation. In the present case, it is the Valero Realty Company—*not* the First Baptist Church of San Antonio—that enjoyed the benefit of a tax exemption on valuable downtown property. Any change in the property's tax status would, under an express contractual provision, affect Valero alone; it would not affect the church.[1] To that extent, the rhetoric of the concurring opinion by Justice Cook is misdirected; its position would provide a haven not for "the poor and the homeless," at 114, but for any profit-making, secular enterprise willing to take advantage of a tax loophole.

The Texas Constitution authorizes the legislature to exempt from taxation "actual places of religious worship." Tex. Const. art. VIII, § 2. Under that authority, the legislature has allowed religious organizations to claim an exemption for real property that is "used primarily as a place of regular religious worship." Tex.Tax Code § 11.20(a)(1). The exempted property may be used for "occasional secular purposes other than religious worship," but only if "the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship." Tex. Tax Code § 11.20(d).

---

1. The lease agreement states:
   Lessor shall be responsible for all taxes and assessments levied on the real estate or rents of the premises; *provided, however, that Lessee shall reimburse Lessor for any increase in ad valorem taxes.*
   (Emphasis added.) The next provision explains how the present dispute made its way to this court:

   Lessee shall have the right to prosecute an appeal of any ad valorem tax matter concerning the premises wherein Lessee may face reimbursement obligations.
   In the caption of this case, Valero's continued involvement is indicated only by a vague "et al."; but in view of the lease's language, Valero has far more at stake in this proceeding than does the church.

The parking lots at issue here were used throughout the work week by Valero Realty Company. The church generally used the parking lots only on Sundays and Wednesday evenings. To transform this commercial parking lot into space "used primarily for church purposes," the majority grasps at four peculiar criteria: (1) the purpose for which the property was purchased; (2) the *church's* primary use of the property; (3) the church's right of access to the property; and (4) its general availability after working hours.

The testimony as to why the church purchased the parking lots is clearly immaterial. The test is not whether the property was *purchased* for religious purposes, but whether the property is *used* for religious purposes. If the rule were otherwise, a religious organization would be free to devote any part of its property to a tax-exempt commercial enterprise, as long as the property was originally purchased for religious purposes.

Similarly irrelevant is the testimony indicating that "the church's primary use of the two parking lots was to provide church members with access to the church facilities." See p. 111. This reference reflects a basic misunderstanding of the statute. The *church's* primary use of the parking lots is immaterial. The exemption applies only if "the primary use of the property is for religious worship." § 11.20(d). The statute does not say that the primary use of the property *by the religious organization* must be for religious worship; if that were the case, any incidental use of the property by the church would satisfy the "primary use" test, as long as that incidental use involved religious worship.

Nor do the church's rights of access to the parking lots establish primary use of the property. Obviously, the use of property entails more than a mere right of access; it lies in the extent to which that right is utilized. If the right is not utilized, there is no "use" of the property at all.

Finally, the majority cites evidence that church members regularly used the parking lots on Sundays and Wednesday evenings, and sometimes used them at other times of the week. See p. 111. This may be evidence of use for religious worship; but it is certainly not evidence of *primary* use for religious worship. On the contrary, this evidence establishes that the church's use of the property was secondary to Valero's use of the property. The use of the parking lots by Valero was plainly not "occasional," as section 11.20(d) requires; it was normal and regular, and far outweighed the church's periodic use of the property.

As noted above, the Texas Constitution authorizes an exemption only for "actual places of religious worship." Tex. Const. art. VIII, § 2. This court has previously emphasized that the words "actual place" impose a significant restriction on the phrase "of religious worship." *Davies v. Meyer*, 541 S.W.2d 827, 831 (Tex.1976). The majority's decision today ignores that restriction. While conceding that actual use of property is "an important factor" in determining primary use, see p. 111, the majority totally disregards the constitutional provision making actual use the *controlling* factor. Instead of focusing on the actual use of the property as a place of religious worship, the majority focuses on such matters as the church's subjective reasons for purchasing the property and theoretical rights of access to it. This approach has no support in the language of the statute, and is inconsistent with the constitutional provision on which the statute is based.

By straining to allow an exemption in this case, the majority compounds the error this court made in *City of Austin v. University Christian Church*, 768 S.W.2d 718 (Tex.1988). Under the Tax Code, the religious-use exemption is available only if all income from a secular use is "devoted exclusively to the maintenance and development of the property as a place of religious worship." Tex.Tax Code § 11.20(d). Here, as in *University Christian Church*, much of the income from the property was not devoted to those purposes; rather, it flowed directly into the hands of the private, commercial entity that operated the parking lots on a daily basis. Apart from

violating the Tax Code, this arrangement raises serious constitutional issues, which the court of appeals will have to address if it rejects the County's factual insufficiency claims.

Even under *University Christian Church,* today's decision is insupportable. The court in *University Christian Church* did conclude that there was a fact issue as to primary use. It did not, however, change the general rules regarding "no evidence" points of error.[2] In this case, there was not a shred of evidence indicating that the parking lots were primarily used for the purpose of religious worship. Thus, the court of appeals properly reversed the judgment of the trial court and rendered judgment that the parking lots are not exempt from taxation.

To defend the majority's result, the concurring opinion by Justice Cook resorts to mischaracterizing the law, the facts, and this dissent. Without even acknowledging the language of our constitution, the concurring opinion inaccurately states that I would allow an exemption only for property that is "actually occupied for religious purposes." See p. 112. In truth, I would interpret our constitution to mean exactly what it says: that the legislature may exempt from taxation "actual places of religious worship." Tex. Const. art. VIII, § 2. A church sanctuary may not be occupied at all times; but it is clearly an actual place of religious worship, and is therefore exempt from taxation. A commercial parking lot, in contrast, is clearly not an actual place of worship, and should not be exempt from taxation. *See Second Church of Christ Scientist v. City of Philadelphia,* 398 Pa. 65, 157 A.2d 54 (1959) (parking lot is not within constitutional provision allowing exemption for "actual places of religious worship").

By equating a commercial parking lot with a church sanctuary, see pp. 112–113, the concurring opinion demeans the exemption that the framers of our constitution allowed for actual places of religious worship. The exemption in article VIII, section 2 was meant to guarantee all Texans the freedom to worship as they choose, without governmental interference in the form of undue burdens or benefits. As a secular, profit-making business, Valero Realty Company has nothing to do with religious worship, and should not be accorded tax benefits in the name of religious freedom.

The concurring opinion suggests that restricting the exemption to actual places of worship would raise insuperable practical difficulties, and would amount to an overwhelming hardship on the church. In fact, applying the Appraisal District's decision would not be a complicated matter, nor would it burden the church: Valero Realty Company would simply have to pay property taxes on its parking lot, just like any other business. The lease agreement, quoted *supra* at note 1, expressly requires Valero to assume the burden of any increase in property taxation.

A literal reading of the constitution would be consistent with the approach taken in this and other states that have construed tax exemptions for property on the basis of its use. For more than a century, this court has recognized the rule prevailing nationwide that when a building is owned by a tax-exempt organization, "the renting of even a part of the building for profit, though the proceeds be devoted exclusively to charity, subjects such part, at least, to taxation." *Morris v. Lone Star Chapter No. 6,* 68 Tex. 698, 704, 5 S.W. 519, 521 (1887) (citations omitted); *see also Gibbons v. District of Columbia,* 116 U.S. 404, 6 S.Ct. 427, 29 L.Ed. 680 (1886); *Village of Oak Park v. Rosewell,* 115 Ill. App.3d 497, 71 Ill.Dec. 293, 295–96, 450 N.E.2d 981, 983–84 (1983); *In re Open Door Baptist Church,* 63 Pa.Cmwlth. 292, 437 A.2d 1291, 1292 (1981); *Christian Home for the Aged v. Tennessee Assess-*

---

**2.** This court recently emphasized that our review of "no evidence" points requires a preliminary examination of "the quality of the evidence offered, inquiring whether the evidence offered has a tendency to prove the existence of a material fact." *Crim v. Navistar,* 823 S.W.2d 591, 592

n. 1 (Tex.1992) (citing Powers & Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence" Points of Error,* 69 Tex.L.Rev. 515, 521–23 (1991)). Today, when the fact findings are more palatable to the majority, a markedly less-demanding level of scrutiny is applied.

*ment Appeals Comm'n,* 790 S.W.2d 288, 291 (Tenn.Ct.App.1990). *See generally* Maurice T. Brunner, Annotation, *Availability of Tax Exemption to Property Held on Lease from Exempt Owner,* 54 A.L.R.3d 402, §§ 6, 14 (1973). In one of the three out-of-state cases cited by the concurring opinion, this general rule was applied to deny a complete exemption to a church camp that was rented during part of the tax year to persons and organizations not affiliated with the church. *Lutherans Outdoors in South Dakota, Inc. v. South Dakota Bd. of Education,* 475 N.W.2d 140, 143 (S.D.1991).

An exception to this rule may apply if the lessee's use of the property has some connection to the lessor's exempt purposes. For example, in another of the three out-of-state cases cited by the concurring opinion, a divinity school's parking lot was held to be exempt because it was used mainly by students and staff, only a nominal fee was charged, and the lot operated at a loss. *Church Divinity School v. County of Alameda,* 152 Cal.App.2d 496, 314 P.2d 209 (Cal.Ct.App.1957). In the present case, there is no suggestion that Valero's use of the property bears any relation to the church's religious purposes: Valero's employees have no apparent connection to the church; the company pays a normal, market-based rent; and the lot operates at a profit.

Rejecting the traditional approach, the concurring opinion argues that the religious-use tax exemption should be liberally construed in favor of the taxpayer. The opinion completely ignores the fact that Valero is the actual taxpayer in this case. More importantly, the opinion also overlooks the 1976 decision in which we soundly rejected the view that the concurring opinion now urges. In *Davies v. Meyer,* 541 S.W.2d at 829, we unanimously held that the religious-use exemption is to be "strictly and narrowly construed." This view is consistent with the approach taken by the vast majority of other states, which all adhere to the general rule that statutory or constitutional exemptions from taxation are strictly construed against the claimant and in favor of the right to tax. *See, e.g., State v. Bridges,* 246 Ala. 486, 21 So.2d 316, 317 (1945) (calling this a "universal rule of construction"); *State YMCA v. Winthrop,* 295 A.2d 440, 441 (Me.1972) ("universally accepted principle"); *see generally* 71 AM.JUR.2D *State and Local Taxation* § 326 (1973) ("fundamental rule of construction").[3]

One reason that religious-use exemptions have been applied restrictively is that any broader approach invites constitutional attacks. This problem is illustrated by events subsequent to the main case relied upon by the concurring opinion, *Central Baptist Church v. Dade County,* 216 So.2d 4 (Fla.1968). That decision prompted a challenge based on the Religion Clauses of the First Amendment to the United States Constitution. After the United States Supreme Court agreed to review a district court's judgment upholding the exemption, the Florida Legislature fended off the constitutional challenge with prompt action: specifically, by amending the statute to allow an exemption only if the property is used predominantly for religious purposes, and only "to the extent of the ratio that such predominant use bears to the nonexempt use." Fla.Stat. § 196.192(2). *See Diffenderfer v. Central Baptist Church,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). Instead of learning from Florida's experience, this court simply closes its eyes to the constitutional issues at stake, in total disregard of "our duty as a court to construe statutes in a manner which avoids serious doubts of their constitutionality."

---

**3.** Apparently the only state to depart from this rule is Tennessee; acknowledging that their approach is "contrary to most other states," Tennessee courts liberally construe tax exemptions in favor of "religious, scientific, literary and educational institutions." *Mid–State Baptist Hosp., Inc. v. City of Nashville,* 211 Tenn. 599, 366 S.W.2d 769, 773 (1963). Even Tennessee, though, has declined to extend its religious-use exemption to parking lots. *See City of Nashville v. State Bd. of Equalization,* 210 Tenn. 587, 360 S.W.2d 458, 467 (Tenn.1962) ("the operation of parking lots ... is not a religious undertaking, but a secular business taxed as a privilege by the state, the county, and the city"); *see also Christian Home for the Aged v. Tennessee Assessment Appeals Comm'n,* 790 S.W.2d 288, 291 (Tenn.Ct.App.1990) (exemption is denied to property leased by religious institution to others).

*FSLIC v. Glen Ridge I Condominiums,* 750 S.W.2d 757, 759 (Tex.1988).

By reversing the judgment of the court of appeals, the majority dramatically expands another tax loophole. This action continues a recent and unfortunate trend of the majority in disregarding legitimate taxpayer concerns, *see Carrollton–Farmers Branch Ind. Sch. Dist. v. Edgewood Ind. Sch.` Dist.,* 826 S.W.2d 489, 522 (Tex. 1992) (forcing taxpayers to continue paying an unconstitutional tax), and granting preferential tax treatment to the privileged few for which other Texans must pay. *See Gifford–Hill & Co. v. Wise County Appraisal Dist.,* 827 S.W.2d 811 (Tex.1991) (according preferential tax treatment to corporate gravel companies and other mineral extractors). What the majority forgets is that tax exemptions and preferences constitute indirect public subsidies that are every bit as real as the direct expenditure of public monies.[4]

The question in this particular cause is whether a parking lot used almost exclusively by a commercial enterprise is "used primarily as a place of regular religious worship." Like the recent query as to whether limestone is a mineral, this question would appear to answer itself. With repeated rationalization, however, the majority once again declares the obvious answer to be the wrong answer. The majority is oblivious to the plight of the ordinary taxpayer who cannot escape paying taxes and who must, in addition, foot the bill for those who escape tax liability through a judicially-created loophole. The tax fairness contemplated by the Texas Constitution has been converted into tax injustice.

I would affirm the judgment of the court of appeals. Therefore, I dissent.

DOGGETT and GAMMAGE, JJ., join in this dissenting opinion.

---

**4.** The legislature has recognized this reality by enacting section 403.014 of the Texas Government Code, which requires the Comptroller to report annually on the cost of certain tax exemptions or tax expenditures. *See* Texas Comptroller of Public Accounts, Sales and Franchise Tax Exemptions (1991).