**BEXAR COUNTY APPRAISAL REVIEW BOARD, et al., Appellants,**

v.

**FIRST BAPTIST CHURCH, et al., Appellees.**

No. 04–89–00543–CV.

Court of Appeals of Texas, San Antonio.

Jan. 20, 1993.

Rehearing Denied Jan. 20, 1993.

Dennis K. Drake, Alvaro Briseno, II, Law Offices of Dennis K. Drake, San Antonio, for appellants.

Robert John Myers, Hickey & Myers, San Antonio, William W. Kilgarlin, Popp & Ikard, Austin, for appellees.

Before REEVES, C.J., and BUTTS and PEEPLES, JJ.

## ON APPELLANTS' MOTION FOR REHEARING

PEEPLES, Justice.

The motion for rehearing is overruled. Our previous opinion is withdrawn and replaced by the following.

Earlier in this property tax exemption case, we held that the evidence was legally insufficient to support the jury's finding that a church parking lot was used primarily for religious purposes. *Bexar County Appraisal Review Bd. v. First Baptist Church*, 800 S.W.2d 892 (Tex.App.—San Antonio 1990). The supreme court disagreed with that ruling and returned the cause to us for consideration of points of error that we did not reach. *First Baptist Church v. Bexar County Appraisal Review Bd.*, 833 S.W.2d 108 (Tex.1992).

Appellants Bexar County Appraisal Review Board and the Bexar Appraisal District (collectively referred to as the district) appeal from a judgment based on a jury finding that two parking lots owned by the First Baptist Church of San Antonio and leased to the Valero Realty Company are exempt from property taxes for 1984–1986.

The judgment ordered that the value of the property on the appraisal roll be reduced to zero, and decreed that the property is exempt from taxation for the three years. The judgment also awarded the church attorney's fees. Additional facts may be found in the two reported opinions.

The district complains that: (1) the judgment exempting the property from taxation is unconstitutional, (2) the award of attorney's fees was unauthorized, and (3) the court made certain erroneous rulings during trial.[1] In one cross-point, the church and Valero seek damages on the ground that the district's claim of unconstitutionality is frivolous and was made for purposes of delay. The district also contends that the evidence is factually insufficient, but the supreme court held the evidence legally sufficient, and in view of its construction of the exemption statute, we hold that the evidence is factually sufficient as well.

## I.

We consider first the district's contention that the exemption violates the Texas Constitution, which mandates a tax exemption for "actual places of religious worship" and states that "all laws exempting property from taxation other than the property mentioned in this Section shall be null and void." TEX. CONST. art. VIII, § 2. The district argues that the parking lot at issue in this case is not an actual place of religious worship, and that to exempt it from property taxation goes beyond article eight, § 2 and is void.

The exemption for a church parking lot leased to a private corporation certainly does not appear to fall within a common-sense reading of the constitution's language, "actual places of worship." But the supreme court has twice stated that "a parking lot may qualify as a place of reli-

gious worship." *First Baptist Church v. Bexar County Appraisal Review Bd.*, 833 S.W.2d at 110; *City of Austin v. University Christian Church*, 768 S.W.2d 718, 719–20 (Tex.1988). In *University Christian Church*, the court said, "For purposes of the tax exemption, a place of religious worship includes not only the sanctuary, but also those grounds and structures surrounding the sanctuary which are necessary for the use and enjoyment of the church." *Id.* at 719. At bottom, the district asks us to adopt the argument made by the dissent in *University Christian Church*. Though the majority in *University Christian Church* did not specifically address the constitutional argument, it clearly did not accept it. The supreme court has held that a parking lot may constitute a place of worship under the statute, and the jury has found that it does in this case. In the face of the supreme court's considered statements, quoted above, we cannot fairly hold that a parking lot is not an actual place of worship under the constitution.[2] We hold that the exemption before us does not violate article eight, § 2.

We next consider the district's argument that the tax exemption violates the First Amendment to the United States Constitution. Generally a statute violates the establishment clause only if (1) it is motivated wholly by an impermissible purpose; (2) its primary effect is to advance religion; or (3) it excessively entangles church and state. *See Bowen v. Kendrick*, 487 U.S. 589, 602, 108 S.Ct. 2562, 2570, 101 L.Ed.2d 520 (1988); *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The United States Supreme Court used a slightly different analysis in upholding a similar property tax exemption in *Walz v. Tax Commission*, 397 U.S. 664,

---

1. The district also argues that the trial court erred in its submission of jury question one and its accompanying instructions. The supreme court dismissed that argument as meritless and we need not consider it further. *See* 833 S.W.2d at 110 n. 2. Contrary to the district's suggestions, the issue did not improperly comment on the weight of the evidence or advise the jury of the effect of its answers.

2. We are aware that the constitution refers to "actual" places of worship, while the statute does not use that term. Nevertheless, we conclude that it would violate the spirit of the court's two decisions to distinguish them on this basis.

90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). The statute before us satisfies each standard.

The Court in *Walz* stressed that the religion clauses mean that such exemptions must be neutral in purpose and effect:

> The course of constitutional neutrality in this area cannot be an absolutely straight line; rigidity could well defeat the *basic purpose* of these provisions, which is to insure that *no religion be sponsored or favored, none commanded, and none inhibited.* The general principle deducible from the First Amendment and all that has been said by the Court is this: that we will not tolerate either governmentally established religion or governmental interference with religion. Short of those expressly proscribed governmental acts there is room for play in the joints productive of a *benevolent neutrality* which will permit religious exercise to exist *without sponsorship and without interference.*
>
> Each value judgment under the Religion Clauses must therefore turn on whether particular acts in question are *intended* to establish or interfere with religious beliefs and practices or have the *effect* of doing so.

*Id.* at 669, 90 S.Ct. at 1411–12, 25 L.Ed.2d at 701–702 (emphasis added). The Court then reasoned that the exemption did not have an improper purpose or an entangling effect, and that it was consistent with the uninterrupted historical practice of benevolent state and congressional neutrality toward religion in this country.

The *purpose* of the tax exemption, said the Court in *Walz*, "is neither advancement nor the inhibition of religion; it is neither sponsorship nor hostility.... [The state] has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of religious worship within a broad class of property owned by nonprofit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups." *Id.* at 672–73, 90 S.Ct. at 1413, 25 L.Ed.2d at 703–704. That is, the exemption

for church property was part of a general tax exemption for a broad variety of non-profit, charitable activities. The statute did not attempt to establish religion; it simply "spar[ed] the exercise of religion from the burden of property taxation levied on private profit institutions." *Id.* at 673, 90 S.Ct. at 1414, 25 L.Ed.2d at 704.

Nor did the statute have the *effect* of excessive governmental entanglement with religion. Both taxation and exemption would require some involvement with religion. "The hazards of churches supporting government are hardly less in their potential than the hazards of government supporting churches." *Id.* at 675, 90 S.Ct. at 1414, 25 L.Ed.2d at 705. "The exemption creates only a minimal and remote involvement between church and state and far less than taxation of churches." *Id.* at 676, 90 S.Ct. at 1415, 25 L.Ed.2d at 705.

Finally, the Court reasoned that constitutional interpretation should not stray too far from its *historical moorings.* Cardozo had warned about the "tendency of a principle to expand itself to the limit of its logic."[3] The Court replied that history sets limits on the step-by-step expansion of legal rules; "such expansion must always be contained by the historical frame of reference of the principle's purpose." *Id.* at 679, 90 S.Ct. at 1416, 25 L.Ed.2d at 707. The Court noted that in an 1886 case it had "accepted without discussion the proposition that federal or state grants of tax exemption to churches were not a violation of the Religion Clauses of the First Amendment." *Id.* at 680, 90 S.Ct. at 1417, 25 L.Ed.2d at 708, citing *Gibbons v. District of Columbia*, 116 U.S. 404, 6 S.Ct. 427, 29 L.Ed. 680 (1886).

Like the New York statute at issue in *Walz*, the statute before us does not differentiate among religions, and it extends the exemption to various nonsectarian groups, such as charities, schools, and veterans' organizations. *See* TEX.PROP.TAX CODE § 11.11 et seq. (Vernon 1992). Thus the statute bears no resemblance to the sales tax exemption condemned in *Texas Month-*

---

**3.** BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 51 (1921).

*ly, Inc. v. Bullock*, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), which singled out religious publications for a tax exemption. The statute's purpose is to avoid taxation on charitable organizations, including religious organizations. There is nothing improper about that legislative purpose. Nor does the statute advance religion or produce excessive governmental entanglement—administrative or otherwise—with religion. And the exemption has history on its side, having been part of the Texas Constitution since 1876. *See* TEX. CONST. art. 8, § 2 (Vernon 1955, historical note).

■ The district points out that the tax exemption upheld in *Walz* required that the religious use be *exclusive*, while the Texas statute requires only that the religious use be *primary*. Here, of course, the district seeks to tax only the church property that is used for commercial purposes, not the property used exclusively for religious purposes. The issue in this case is not whether church property is exempt from taxation, but whether that exemption is lost when the church uses the property for commercial purposes.

It is true that the exemption involved in *Walz* required that the property be used exclusively for religious purposes. But nothing in *Walz* suggested that it would violate the First Amendment to exempt religious property used primarily but not exclusively for religious purposes. The purpose and effect of the Texas exemption are the same as those of the New York statute discussed in *Walz*. The Texas Supreme Court has upheld the jury finding that the property at issue here is being used primarily for religious purposes. *See* 833 S.W.2d at 110–11. Our previous opinion upheld the finding that it is "reasonably necessary" for engaging in worship. *See* 800 S.W.2d at 896. We think such an exemption is sufficiently covered by the Court's reasoning in *Walz* even though the statute does not require that the religious use be exclusive.

■ The district also argues that religion is being singled out for favoritism because church property is exempt if used *primarily* for religious purposes, while

other charitable property must be used *exclusively* for charitable purposes. It is true that the exemptions for charitable organizations, youth development associations, and schools extend to property used "exclusively" for the organization's purposes. *See* TEX.TAX.CODE §§ 11.18(a)(2), 11.19(a)(2), 11.21(a)(2) (Vernon 1992). But each statute softens these provisions and preserves the tax exemption if the non-organizational use is "incidental." *See id.* §§ 11.18(b), 11.19(b), 11.21(b). The miscellaneous exemptions in the same statute generally do not require exclusively charitable use. *See id.* § 11.23. We conclude that the legislature has coordinated the religious and other charitable exemptions with reasonable equality and with an even hand, and that any difference cannot be called an establishment of religion under *Walz*.

■ The district also cites article one, § 6 of the Texas Constitution, which provides: "No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent." TEX. CONST. art. I, § 6. The district has simply cited this provision without briefing or analysis beyond its discussion of the First Amendment's establishment clause. We have rejected its First Amendment contention. It has not argued that the state constitution differs from federal law in any way. It has not analyzed the language or background of article one, § 6; nor has it cited state cases. To the extent that the district's state-law contention differs from its federal contention, it has been waived by failure to brief it. *See McPherson Enter., Inc. v. Producers Coop. Marketing Ass'n*, 827 S.W.2d 94, 96 (Tex.App.—Austin 1992, no writ); *White v. Bath*, 825 S.W.2d 227, 230 (Tex.App.—Houston [14th Dist.] 1992, writ denied); TEX.R.APP.P. 74(f).

II.

■ The district challenges the court's award of $125,439.18 in attorney's fees to the church. Ordinarily, attorney's fees may not be recovered in the absence of statutory authority or a contract between

the parties. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,* 835 S.W.2d 75, 77 (Tex.1992); *First City Bank v. Guex,* 677 S.W.2d 25, 30 (Tex.1984); *Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 803–804 (Tex.1974). In defense of the attorney's fee award, the church cites the tax code and the declaratory judgments act.

Under the tax code a taxpayer who successfully appeals an *excessive appraisal* or an *unequal appraisal* may recover reasonable attorney's fees.[4] The tax code does not expressly authorize recovery of attorney's fees to taxpayers who successfully obtain *exemptions,* and the church does not contend that it does. Instead, the church argues that the exemption that it sought and was granted amounted to a lowering of the appraisal from more than $2,000,000 to zero, and therefore it can recover attorney's fees because it challenged an excessive appraisal. In this regard, the judgment did not stop at declaring the property *exempt* from taxation. The court went further and "found" that "the appraised value of the property, according to the appraisal roll, *exceeds* the appraised value required by law, and that the First Baptist Church is entitled to a reduction of the appraised value on the appraisal roll to zero for each of the tax years in question (1984, 1985, 1986)" (emphasis added). We reject this basis for recovering attorney's fees.

The statute plainly confines attorney's fees awards to cases of excessive or unequal appraisals, and not exemptions. It is true that the church asked for and the court granted both the exemption and a declaration that the appraised value was zero. The court even ordered the district "to correct the appraisal roll to reflect that the market value of the properties" is zero, even though the parties had stipulated that if the exemption were denied the market value exceeded $2,000,000. But that does not bring the case within sections 42.25 and 42.26. It would require pure sophistry for us to hold that this was a suit about valuation and appraisal instead of exemption. We agree with the court in *Coastal States Crude Gathering Co. v. State Property Tax Board,* 747 S.W.2d 61, 63 n. 1 (Tex. App.—Austin 1988, no writ), that "this lawsuit dealt with the question of *whether* the property should be appraised and taxed at all, not the *value* of the appraisal." In an analogous context, the courts have held that a suit to establish an open-space land designation is not a suit to contest excessive or unequal appraisal, and therefore attorney's fees are not recoverable. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,* 835 S.W.2d 75, 79 (Tex.1992); *Kerr Central Appraisal Dist. v. Stacy,* 775 S.W.2d 739, 743 (Tex.App.—San Antonio 1989, writ denied). We hold that because the suit was in reality to establish an exemption and not to rectify an unequal or excessive appraisal, the tax code does not support the award of attorney's fees.

■ The church also argues that it sought and received a declaratory judgment and that the declaratory judgment act supports the attorney's fees award. Section 37.009 of the act provides, "In any proceeding under this chapter [declaratory

---

4. During the years at issue in this suit, 1984–1986, the tax code provided as follows:

§ 42.25. **Remedy for Excessive Appraisal**
If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court.

§ 42.26. **Remedy for Unequal Appraisal**
The district court may not grant relief on the ground that a property is appraised unequally in comparison to the level of appraisals of other property in the appraisal district unless the appraised value of the property varies at least 10 percent from its value calculated on the basis of the weighted average level of appraisals in the district. In that event, the court shall order the appraised value changed to the value as calculated on the basis of the weighted average level of appraisals in the district.

§ 42.29. **Attorney's Fees**
A taxpayer who prevails in an appeal to the court under Section 42.25 or Section 42.26 of this code may be awarded reasonable attorney's fees not to exceed the greater of $5,000 or 20 percent of the total amount of taxes in dispute.

Tex.Prop.Tax Code §§ 42.25, 42.26, 42.29 (Vernon 1992 and explanatory notes). Later amendments to §§ 42.26 and 42.29 do not affect this appeal.

judgments], the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *See* TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). But a litigant may not seek a declaratory judgment in an existing suit simply to recover attorney's fees that are otherwise not authorized by statute. *City of Laredo v. South Texas Nat'l Bank*, 775 S.W.2d 729, 732 (Tex.App.—San Antonio 1989, writ denied); *Heritage Life Ins. Co. v. Heritage Group Holding Corp.*, 751 S.W.2d 229, 235–36 (Tex.App.—Dallas 1988, writ denied). "The Declaratory Judgments Act is 'not available to settle disputes already pending before a court.'" *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990), quoting *Heritage Life*, 751 S.W.2d at 235.

This rule is essential as long as the legislature chooses to authorize attorney's fees in some situations and to deny them in others. If the law were otherwise, litigants could routinely create a right to attorney's fees by seeking a declaration that they are entitled to relief on claims for which attorney's fees are not recoverable. In tort suits, for example, litigants could seek a declaration of liability—or nonliability—and thereby recover attorney's fees. *See Weaver v. Aids Servs., Inc.*, 835 S.W.2d 798, 803 (Tex.App.—Austin 1992, writ denied). In an analogous situation, the court has held that a potential tort defendant may not use the declaratory judgment act to seek a declaration of nonliability and thereby choose favorable venue. *See Abor v. Black*, 695 S.W.2d 564 (Tex. 1985). The declaratory judgment act does not support the award of attorney's fees.

For the reasons stated, we sustain the district's point one and reform the judgment to delete the award of attorney's fees.

5. Section 11.20 of the property tax code provides in pertinent part as follows:

(a) An organization that qualifies as a religious organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of:

### III.

The district next complains about various trial rulings admitting evidence and about the church's jury argument.

■ The court allowed the church to question a witness for the district about exemptions the district had granted to the City of San Antonio and to other nonchurch taxpayers. Clearly, this evidence was not relevant to the main issue in the case—whether the church met the standards of § 11.20(a)(1) of the tax code.[5] The church either met the statutory requirements for exemption or it did not, and whether the city had granted an exemption to other taxpayers had nothing to do with whether the church qualified under the statute. For this reason, the church pleaded that the district had violated the federal and state equal protection provisions by appraising its property "unequally and ununiformly in comparison with other similar properties." The church argues that the evidence about other exemptions was relevant to its claim of unequal treatment.

The church did not present evidence to raise an issue on this cause of action, and did not even request that it be submitted. Nevertheless, the court did not err in allowing the church to question the district's head appraiser about these other exemptions. The matter was pleaded, and the district had not removed it from the case by summary judgment.

"The government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable." *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 416 (1954), quoting *City of Wichita Falls v. J.J. & M. Taxman Refining Co.*, 74 S.W.2d 524, 530 (Tex. App.—Fort Worth 1934, writ ref'd). The court said essentially the same thing in these words:

(1) the real property that [1] is owned by the religious organization, [2] is used primarily as a place of regular religious worship, and [3] *is reasonably necessary for engaging in religious worship....*

TEX.PROP. TAX CODE § 11.20 (Vernon 1982) (emphasis added).

If a valuation fixed by a board of equalization is attacked on the ground of unlawful or arbitrary discrimination it is not sufficient to show, comparatively, that in other isolated instances, property of equal or greater value than that in suit was valued at less ... or even that other property was omitted from the tax rolls altogether ... except where the omission was the result of a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden.

*State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569, 573 (1954) (citations omitted). There is no suggestion here that the district omitted property from the tax rolls pursuant to a scheme to permit classes of property to escape taxation, which *Whittenburg* requires.

Nevertheless, given the state of the pleadings, which included the count for denial of equal protection, we cannot say that the court erred in admitting the evidence.

■ Over the district's objection, the court also allowed the church to elicit from a Valero witness testimony about several of Valero's charitable works.[6] The witness described Valero's involvement raising money for the United Way, the American Cancer Society, the Salvation Army, the American Heart Association, and "various universities." The witness also told of Valero's yearly Christmas party given for children from an orphanage. He added, "Any charity here in town that's established, we've got some participation, either volunteer time or money." Similarly the church was permitted to list such charitable works as its counseling ministry, a soup kitchen, a dental clinic, and a refugee ministry for boat people and others who fled Southeast Asia after the Vietnam War.

No one contends that Valero's character was an issue in the case, or that its good or bad character was relevant to any issue before the jury. The jury was asked only whether the church's parking lot met the statutory qualifications for the tax exemp-tion. The church argues that it is "just good lawyering" to humanize and personalize a corporate entity. We will go even further and say that good lawyers everywhere would be eager to prove up their clients' good deeds and the evil deeds of their opponents, if the rules permitted it. Under such a system, trials would turn into contests about which party has the better charitable record. There might be no end to the evidence litigants would present about themselves and their opponents. But in civil cases the rules strictly limit the admissibility of evidence of good or bad character. *See* TEX.R.CIV.EVID. 404–405; *see generally* 33 STEVEN GOODE, ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL §§ 401.1–405.3 (Texas Practice 1988 & Supp.1991). The evidence was not admissible on grounds that it was relevant to a jury issue.

The church argues the district had opened the door during its opening statement by mentioning that several Valero executives were attending the trial and that it and the church were represented by two lawyers. (Counsel for the district had also established that Valero was in business for profit and was not a charitable or nonprofit entity, which was proper in this case involving the statutory exemption for religious and charitable activities.) Beyond any doubt, it has become increasingly common for attorneys to use prejudice as a weapon in the modern-day lawsuit. Trial judges should use their authority under evidence rules 401–403 to exclude evidence with weak probative value concerning the jury issues and strong prejudicial impact. Here the district's alleged door-opening remark—a mere reference to the presence of corporate executives in the courtroom—seems tame in comparison to prejudicial remarks employed in other kinds of litigation. A similar argument was recently used *against* a church in *Macedonia Baptist Church v. Gibson,* 833 S.W.2d 557, 561–62 (Tex.App.—Texarkana 1992, writ denied). Nevertheless, we think it was

---

**6.** Under the 1980 lease agreement, Valero is responsible for the upkeep and maintenance of the lots and for the payment of all property taxes over and above the 1979 tax rate. In 1984–1986 it paid the church rental of $111,925 per year for use of the parking spaces.

within the court's broad discretion to admit the evidence.

■ The district also challenges the court's admission of evidence that a Baptist church in downtown Houston had moved to the suburbs because it had no parking space downtown. That evidence was relevant to the issue of whether a parking lot was "reasonably necessary for engaging in worship," which § 11.20 of the statute required the church to prove and which the court submitted in its charge. The court properly admitted the evidence.

The District also complains about portions of the church's jury argument. The church's lawyers had agreed to the district's motion in limine, which asked that counsel not comment on its failure to call witnesses without first approaching the bench for a ruling. Nevertheless, lead counsel for the church asked a witness for the district whether certain employees were still employed, still living in town, and whether they would "be here today to testify." Counsel for the district objected. The court sustained the objection and said, "Go into some other line of questioning. You may not argue that."

In final argument the church's attorney asked the jury, "Now, where are the people with the firsthand knowledge who could have come down here and talked? You haven't heard anybody from the Appraisal District with firsthand knowledge." The court sustained the district's objection.

This argument was a clear violation of the in-limine ruling. Counsel argues in this court that he thought the court had simply prohibited mention of witnesses equally available to both parties. But the in-limine ruling plainly forbade comment on the District's failure to call "any" witnesses, and any doubt about the reach of that ruling had been eliminated earlier during trial when the court sustained the district's objection to the church's questions about whether certain district employees were still in town and whether they would "be here to testify."

■ Even without the in-limine ruling, the argument was questionable. In certain circumstances the trial court may allow counsel to comment on the opposite party's unexplained failure to call a witness. The witness (1) must be under the opponent's control or must stand in some special relationship to the opponent, and (2) must have been in a position to obtain material information unfavorable to the opponent about an issue in the case. In addition, (3) the record must show that the witness is legally available. *See Tex-Jersey Oil Corp. v. Beck,* 157 Tex. 541, 305 S.W.2d 162, 167 (1957), *overruled on other grounds, Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983); *First Interstate Bank v. Bland,* 810 S.W.2d 277, 289 (Tex.App.—Fort Worth 1991, no writ); *Johnson v. Smith,* 446 S.W.2d 357, 359 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); 4 McDONALD, TEXAS CIVIL PRACTICE § 23:12 (1992).

■ Comment on the failure to call a witness is appropriate only when it is clear that the uncalled witness may have adverse knowledge about a material disputed fact. In *Tex-Jersey,* for example, the company did not call an eyewitness to an accident scene. In *Gulf, Colorado & Santa Fe Railroad v. Parmer,* 389 S.W.2d 558, 564 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.), the railroad did not call an employee, present in the courtroom, who might have tampered with the accident scene before a photographer took pictures. In several cases there was comment about a litigant's failure to call a doctor who had pertinent information. *See* McDONALD, *supra,* § 23:12, at note 90.

■ Counsel may not comment on the adverse party's failure to call a witness unless the witness has information *material* to the issues before the jury. Trial courts therefore should not allow counsel to comment on the failure of a company to call employees who may know something about peripheral issues in the case. Otherwise lawyers would be penalized for concentrating on the heart of a case and not presenting marginal or cumulative evidence. Surely our legal system should not permit one advocate to implicitly criticize the other in final argument for getting to the crux of a case instead of presenting

**564**

testimony about each and every minute matter that might have some relevance to the issues. Under our rules many bits of evidence, coming from many potential witnesses, might be considered relevant—that is, having a tendency to make the existence of any material fact more probable or less probable than it would be without the evidence. *See* Tex.R.Civ.Evid. 401. Trials last long enough already, and the law should not motivate advocates to call extra witnesses for fear of being criticized in jury argument for not presenting every possible witness under their control.

The argument before us appears to criticize the district for failing to present witnesses on peripheral issues, something the court certainly had the discretion to forbid. By granting the district's motion in limine and sustaining its objections during trial, the court had forbidden the mention of the failure to call witnesses. The central question in the trial was whether the church qualified under the statutory definition for the exemption; there is no indication that the district's employees withheld or had access to any pertinent information. And counsel's argument seems especially unnecessary because the information bearing upon the exemption rested with the church and Valero, not with the district, and because the rules make it so easy to depose or subpoena adverse witnesses. The witnesses may have had information relevant to the church's claim that it had received unequal treatment in comparison to other similar property, but that claim was not submitted to the jury.

Nevertheless we cannot reverse the judgment unless the record shows that the argument was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See* Tex.R.App.P. 81(b)(1). No reversible error is shown.

The district makes an additional complaint about the church's jury argument, which dealt with how the church spent the tax savings. It also complains of two instances in which the court sustained objections to his attempted cross-examination of Valero witnesses, the admission of a misleading photograph, and a ruling during voir dire. Having considered the whole record, we hold that in each of these instances even if the court's rulings were erroneous they were not reversibly harmful under Tex.R.App.P. 81(b)(1).

### IV.

We reject the church's request that we assess damages under Tex.R.App.P. 84 for frivolous assertion of its constitutional arguments. Though we have overruled the district's constitutional challenge to this tax exemption, the challenge was certainly not frivolous. The district did not delay this appeal by adding constitutional arguments to its other plausible contentions; one of them we have sustained, and others presented error, though we have found the error harmless.

\* \* \* \* \* \*

We have considered all the district's complaints about the judgment. With the exception of the award of attorney's fees, all are overruled.

We reform the judgment to delete the award of attorney's fees. As reformed, the judgment is affirmed.